## PULASKI COUNTY v. THE STATE.

1. **IMPROVEMENTS:** *Title not acquired by.*
   A land owner can not be improved out of his estate. Improvements placed upon his land belong to him, and can be used by the maker, at the utmost, only as a set-off against rents and profits—never for the purpose of acquiring title.

2. **ADVERSE POSSESSION:** *Permissive: Occupation by county: Presumption.*
   In the absence of proof to the contrary, the use and occupation of the State's land by a county will be presumed to be by sufferance and without any intention of the county to appropriate it to itself; and mere permissive possession, however long, can never ripen into a title. Possession to be adverse must be hostile, and not subservient, to the rights of the true owner.

3. **AGENTS:** *Estoppel of State by acts of officers.*
   The State can not be estopped by unauthorized acts of her officers or agents.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*F. W. Compton, R. C. Newton* and *George W. Caruth* for appellants.

1.   Pulaski County was the beneficiary of the grant of June 15, 1832, and the State having used county funds in the construction of the east wing of the State House, holds that portion as trustee for the county. *Acts Congress, March 2, 1831; June 23, 1836; June 15, 1832.*

2.   The rights of Pulaski were recognized by Governor Pope, and by the Legislature, and the State paid the county rent for two of the rooms in the east wing.

3.   The State by her acts is equitably estopped from denying the county's title or right. *Bigelow on Estoppel, pp. 578–9; 6 Cranch, 53; 13 Pet., 107; Black, C. C., 325; 2 Penn., 546.*

4.   The claim of the State is *stale. U. S., 2 Beebe, 17 Fed. Reporter, 36; Ib., 565; 15 Ib., 753, 758.*

*C. B. Moore,* Attorney General, for the State.

1.   The State owns the legal title to the ground.

2.   The payment of rent was wholly unauthorized by law, and the unauthorized acts of its officers can not bind the State.

3.   The county fails to show any equitable right whatever to the premises.

SMITH, J.   The State brought ejectment against the county for certain rooms in the east wing of the State House.   Upon the coming in of the answer, which set up some supposed equities in the premises, the cause was, at the instance of the defendant, transferred from the Circuit Court to the Chancery Court.   It was there heard upon

Pulaski County v. The State.

the pleadings and accompanying exhibits, and a decree rendered for the plaintiff.

The deeds filed with the complaint show that the legal title to the property is in the plaintiff. This the answer admits, and alleges that the east wing was built wholly or in part with the proceeds of the sale of the thousand acres granted to the territory by act of Congress, approved June 15, 1832, for building a jail and court-house at Little Rock. This, if it be true, can not help the defendant's case; for the donation was to the territory, and the plaintiff, not the defendant, is the legal successor to the property rights of the territorial government.

**1. Title not acquired by improving land.** Nor does it alter the case that the defendant may have expended considerable sums of money in improving and repairing the rooms. A land owner can not be improved out of his estate. Betterments belong to the owner of the soil, and can be used at the utmost only as a set-off against rents and profits, never for the purpose of acquiring title. *West v. Williams*, *15 Ark.*, *682; Jones v. Johnson*, *28 Ib.*, *211.*

**2. Adverse Possession: Permissive: Occupation by county: Presumption.** The county has used and occupied the rooms for keeping its records, and for holding its courts for more than forty years. The circumstances under which it originally took possession are not shown. Probably it was because the State did not need the rooms for its own use. But be this as it may, in the absence of any contract or legislative recognition of a higher right, it will be presumed that such use and occupation were by sufferance merely, and without any intent on the part of the county to appropriate the land to itself. Now a permissive possession, however exclusive, and "however long it may in point of fact have endured, could never ripen into a title against anybody, for it was not considered as the possession of the precarious occupier, but of him upon whose pleasure its continuance

depended." *Chalmondely v. Clinton, 2 Jac. & Walk., 1; Ellsworth v. Hale, 33 Ark., 633.*

The whole doctrine of title by limitation rests upon the acquiescence of the owner in the hostile acts and claim of the person in possession. Hence possession, to be adverse, must be in hostility, and not in subserviency to the rights of the true owner. *Sedy. & Wait on Trial of Title to Land, secs. 749, 751; Angell on Limitations, 6th ed., p. 388.*

It appears that, during the era of reconstruction, the Chief Justice of this court audited and approved an account for rent for some of the rooms in controversy, and that this demand was actually paid to the county out of the contingent fund for this court. But no such payment was authorized by law, and the State can not be estopped by the unauthorized acts of its officers. *Woodward v. Campbell, 39 Ark., 580; Woodruff v. Berry, 40 Ib., 251.*

The county has never had the shadow of a title, legal or equitable, and the decree of the Chancellor must be affirmed.