CLAY v. BILBY.

Opinion delivered January 9, 1904.

1. TAX SALE—OVERDUE TAX ACT—LACHES.—Where plaintiff permitted the taxes to remain unpaid on his land for 38 years, and waited 16 years after the land was sold under the overdue tax act (Acts 1881, p. 63) before suing to set aside such sale, without showing that the taxes for which the land was sold were illegal, or had been paid, and without showing any other meritorious defense, his demand is stale. (Page 105.)

2. OVERDUE TAX DECREE—IRREGULARITY—PROOF OF PUBLICATION.—A decree in an overdue tax proceeding is not void on collateral attack because the affidavit of publication of the warning order fails to state that the affiant was publisher of the paper, that it was printed in the county named in the affidavit, and that it had a *bona fide* circulation therein for one month before the date of the first publication; these defects constituting mere irregularities not affecting the court's jurisdiction. (Page 106.)

Appeal from Arkansas Chancery Court.

JOHN M. ELLIOTT, Chancellor.

Affirmed.

*Lewis & Ingram,* for appellants.

The court acquired no jurisdiction by the warning order. 65 Ark. 90; 61 S. W. 918. The proof of the publication of the warning order was insufficient. 65 Ark. 142. A judgment or decree rendered without notice is absolutely void. Sand. & H. Dig., § 4190; 49 Ark. 411. The decree does not bind anyone, because the parties are not named. 38 Ark. 438. The five year statute of limitation runs only against parties to the suit in which the sales were made, and not against strangers to the suit. 101 Fed. 97, 98.

*W. N. Carpenter* and *Parker & Parker,* also for appellants.

Overdue tax decrees are subject to collateral attack, if the statute is not strictly followed. *Cf.* 51 Ark. 34; 10 Fed. 891; 64

Ark. 108; 59 Ark. 483; 55 Ark. 627; 61 Ark. 50; 52 Ark. 312; 55 Ark. 30; 56 Ark. 419; 65 Ark. 90; 61 S. W. 918.

*John F. Park, James E. Gibson* and *John B. Jones,* for appellee.

One who seeks to have a decree set aside or a judgment vacated in equity for want of sufficient service must show that he has a meritorious defense. 50 Ark. 462; 69 Ark. 518. The act conferred judicial, and not merely ministerial, power, and the proceeding and decree is an exercise of judicial power by the chancery court. *Cf.* the following authorities as to when acts of courts, etc., are purely ministerial : Cooley, Taxation, § § 15, 16; 17 Ind. 169; 51 Ark. 34; 75 Tex. 385. Generally, as to when acts are judicial, see: 11 Abb. Pr. 301 ; 2 Wall. 328; 5 Cranch, 173 ; 10 Pet. 449; 21 Ark. 364; 66 Ark. 1. Cooley, Taxation, § § 453, 525-6-7, criticised, and cases there cited, distinguished. In proceedings *in rem,* like the one at bar, where it appears that the court had jurisdiction of the subject-matter or the *res,* and the general power to grant the character of relief sought, all steps as to notice and matters preliminary to decree will be presumed to have been regular. 2 Pet. 168; 2 How. 339; 138 U. S. 455. Such a judgment without notice is not a nullity, and can be vacated, set aside or annulled only by direct, and not by collateral, attack. 55 Ark. 30; 112 U. S. 294; 11 Ark. 519, 546, 547, 550, 531, 534, 536; 49 Ark. 397; 28 Ark. 174; 49 Ark. 345; 10 Pet. 449; 10 Wall. 308; 95 U. S. 714. The record imports verity, and, if appearance is shown by the record, it cannot be contradicted by extrinsic evidence, nor can it be shown that the parties had no right to appear. Appearance cures defective notice. 55 Cal. 165; 64 Cal. 296; 22 Ind. 324; 26 N. Y. 418; 6 Conn. 508. That the recital as to appearance is conclusive on collateral attack, see further : 7 S. & R. 166; 111 Ind. 223; 1 Dev. L. 313; 62 Ind. 398; 6 Pet. 691 ; 3 Wall. 478; 11 Ark. 532; 61 Ark. 574; Van Vleet's Coll. Att. 2; 21 Ark. 146; 50 Ark. 338; 34 Ark. 642; 17 Fed. 98; 80 Ill. 307; 10 Ill. 159; 7 Cal. 203; 72 Mo. 261; 11 S. & R. 438; 15 Wall. 591. The purchaser is not bound to look beyond the decree. 2 Pet. 168; 2 How. 339; 101 U. S. 417; 2 Wall. 210; 136 U. S. 519; 2 Mich. 234; 21 Ark. 364. The whole world is bound by a decree *in rem,* and the rule confining the defense of laches to parties has no application. *Cf.* 10

Pet. 473. The complaint is sufficient to give the court jurisdiction. Defects in a bill do not avoid the decree. 2 Oh. St. 252; 46 Wis. 650; 33 Ind. 460. A decree is not avoided by any defect that was amendable. 92 Mo. 178; 79 Ill. 233; 79 *Id.* 39; 47 Ark. 31. Nor is a judgment void because the proceeding did not warrant the judgment. 89 Mo. 174; 3 A. K. Marsh. 536; 17 Wis 169; 24 Wis. 93; 114 Ill. 147.

*H. A. & J. R. Parker,* for appellants in reply.

The return or service on the publication or on the summons governs the recital in the decree that "due service was had according to law." 4 Col. 416; 7 Col. 8; 110 U. S. 701; 79 Ia. 365; 37 Minn. 194, 195; 66 Fed. 90; 82 Fed. 243; 50 Ark. 393; 84 Fed. 301; 21 Nev. 319, 320; 76 Va. 625. The legislature had no power to prescribe for the court rules of interpretation, as attempted in § 18, act 1881, p. 30. 44 Ark. 273; 48 Ark. 521; 13 Cal. 25. Where the bill failed to aver facts sufficient to entitle plaintiff to relief, the court may and should, even upon default, refuse to enter judgment. Black, Judg., § 84; 32 Ark. 445; 56 Ark. 419; Fr. Judg. § § 538-9. The court cannot presume that a cause of action is proved when none is stated. 28 N. H. 118; 16 N. H. 551; 32 Mo. 188; 16 Ill. 147. When a court exercises special powers not in accordance with the common law, or exercises its general powers by virtue of some statute over a class of cases not within its ordinary jurisdiction, the facts essential to the exercise of the special jurisdiction must appear in the record. 51 Ark. 34; 64 Ark. 108; 59 Ark. 483; 54 Ark. 627; 61 Ark. 50; 52 Ark. 312; 55 Ark. 30; 56 Ark. 419; 65 Ark. 90; 61 S. W. 918; 10 Fed. 891. The rule of *caveat emptor* applies to judicial sales. Rorer, Jud. Sales, § § 459, 460, 461; 9 Wheat. 616; 32 Ark. 321. If the complaint fails to state a cause of action, any decree thereon is void. 32 Ark. 445; 56 Ark. 419; Fr., Judg., § § 538-9; Black, Judg., § § 84, 87, 93. When a court of general jurisdiction has special or summary powers, wholly derived from statute, its decisions must be treated like those of courts of limited and special jurisdiction. Brown, Jur., § 3, p. 63, and cases cited.

*John F. Park, James A. Gibson* and *John B. Jones,* for appellee in reply.

On a proceeding in the nature of a bill for review, a decree can be reviewed only for errors of law apparent on the face of the proceedings. 32 Ark. 753; 26 Ark. 600; 59 Ark. 441; 60 Ark. 453. After the term of court a judgment which does not come within Sand. & H. Dig., § 4197, can be attacked only by bill for review. 33 Ark. 454; 52 Ark. 316; 53 Ark. 310. This bill must be within the prescribed term for appeal or writ of error. 135 U. S. 227; 10 Wheat. 146.

*H. A. Parker, J. R. Parker* and *W. N. Carpenter,* for appellants in reply.

Further, on question of jurisdiction, see: 25 Ark. 60; 40 Ark. 124; 11 Ark. 120; 50 Ark. 439; 55 Ark. 35; 155 U. S. 404; 8 Fed. 566; 14 Fed. 603; 37 Fed. 37; 57 Fed. 970; 70 S. W. 295; 26 Pac. 1009; 17 Utah 257; 58 Mich. 293; 39 Minn. 337.

BATTLE, J. Matthew Clay, D. D. Saunders and E. V. Mc-Farland instituted a suit in the Arkansas chancery court against J. S. Bilby, and asked the court to quiet title to certain land by setting aside a decree condemning the same to be sold under what is generally known as the "overdue tax act," and by setting aside the sale thereof in pursuance of such decree. They alleged in their complaint that they were the owners of the land, and, without showing the proceedings of the court under which he claims title, stated that the defendant "is claiming or pretending to claim the title to said land by virtue of what is known as an 'overdue tax deed.'" and alleged in the same vague and indefinite way "that said overdue tax title is void * * * because the chancery court of Arkansas county, Arkansas, had no jurisdiction to render the alleged decree upon which the said title is based. That there was no publication or proof of publication of the warning order therein, as the law requires, and that there was absolutely no notice of the * * * pendency of said cause, either personal or constructive."

The defendant answered, and denied that plaintiffs were the owners of the land, and admitted "that he acquired title through

a sale under an overdue tax proceeding; that the land was for-
feited to the state, and on August 3, 1882, a complaint was filed,
charging that taxes were due, and that the forfeiture was void,
and praying a lien; and summons was issued and served upon
the state auditor; that a warning order was issued and recorded
* * * and was duly published;" that the circuit court, on the
9th day of February, 1883, decreed that the forfeiture to the state
was void, and that certain taxes were due upon the land, and
found the amount of the same and penalty and costs to be $9.16,
"and ordered and decreed the same to be a lien upon the land, and
that the same be sold, unless [the taxes, penalty and costs] were
paid within a day named in the decree; and appointed J. J. Mc-
Evoy commissioner to sell the land and execute the decree;" "that
the lien was not paid, and the commissioner, after advertising the
land according to law and the decree, sold the same at public sale
for the amount of said lien and costs, and at the sale said lands
were purchased by John T. Burns for the amount of the decree
and costs, and said sale was duly approved by the court; and that
said Burns sold and assigned his certificate of purchase, issued
to him by the commissioner, to the Arkansas Real Estate Com-
pany, to which a deed was issued September 22, 1885, and said
company sold said land to defendant by deed dated May 11, 1887."

And the defendant further alleged "that the plaintiffs have
exercised no ownership over said land for thirty-eight years, and
abandoned the land, and their claim is stale, and cannot be
enforced in a court of equity."

The court, after hearing the cause upon its merits, dismissed
the complaint for want of equity; and the plaintiffs appealed.

The land in controversy was forfeited to the State of Arkan-
sas on account of the nonpayment of the taxes assessed against
the same. For twenty-three years no taxes were paid thereon.
On the 3d day of August, 1882, a complaint was filed in the
Arkansas circuit court, pursuant to an act entitled "An act to
enforce the payment of overdue taxes," approved March 12, 1881,
in which it was alleged that the forfeiture was void, and the
plaintiff asked that the land be sold to pay the taxes due thereon.
An order requiring all persons having any right or interest in the
land to appear and show cause, if any they could, why a lien shall
not be declared on the same for unpaid taxes, and why it should

not be sold for nonpayment thereof, in legal form, was entered on the record. A copy of it was published, and the following proof of the publication thereof was filed: "I, J. P. Pointer, one of the publishers of the Arkansas Gleaner, a newspaper published in the state and county of Arkansas, do hereby solemnly swear that the annexed and foregoing advertisement was published in said newspaper three weeks consecutively, towit: November 22 and 29 and December 6, 1882. J. P. Pointer, one of the publishers of the Arkansas Gleaner.

"Sworn to before me, the 4th day of January, 1883. J. J McEvoy, Clerk."

On the 9th day of February, 1883, the court set aside the forfeiture, the same being illegal, and ordered the land sold to pay the taxes on the same, and appointed a commissioner for that purpose. The land was sold on the 17th day of May, 1883, to John T. Burns, and the sale was approved by the court. On the 14th of April, 1899, this suit was brought to set the sale aside and to quiet title; lacking one month and three days of being sixteen years after the sale was made.

The appellants failed to show that they had any meritorious defense in the suit instituted under the "overdue tax act." They do not allege that the taxes for which the land was sold were illegal or paid. Not a single ground for equitable interposition appears. *State* v *Hill*, 50 Ark. 458, 8 S. W. 401. Without one palliating excuse, they show themselves guilty of the grossest negligence. They knew their land was subject to taxation, and liable to be sold if the taxes were not paid, yet they waited thirty-eight years before they offered to pay taxes. There is nothing in their case "to call forth a court of equity into activity."

But appellants say that the decree rendered in the suit instituted under the "overdue tax act" was absolutely void, because, in the affidavit filed to prove publication of the warning order, the affiant did not swear that he was a publisher of the Arkansas Gleaner, the newspaper in which it was published, and that such newspaper was printed in the county named in the affidavit, having a *bona fide* circulation therein for one month before the date of the first publication of the warning order, and that it should be treated as void upon collateral attack. Is this true?

The subject of impeachment of judgments of courts of competent jurisdiction was fully and well considered in *Boyd* v. *Roane,* 49 Ark. 397. In that case the court held that "since the enactment of the statute (Mansf. Dig.. § 5201) declaring all judgments pronounced by any of the courts of this state against any one without notice absolutely void, the doctrine laid down in '*Borden* v. *State,* 11 Ark. 519, that the judgment of a superior court rendered without notice is not void, but only voidable, has been adhered to so often that it has become, in its application to analogous cases, a rule of property not to be disturbed by the courts;" that the statute applies to judgments pronounced in adversary suits, either in law or in equity; that such judgments without notice are absolutely void; that in case of domestic judgments collaterally attacked the question of notice or no notice must be tried by the court upon an inspection of the record only; and that, in the event the record is silent as to notice, the presumption is that notice was given, and this presumption cannot be contradicted. *McLain* v. *Duncan,* 57 Ark. 53, 20 S. W. 597; *McConnell* v. *Day,* 61 Ark. 474, 33 S. W. 731.

The same rule has been substantially laid down by the courts of last resort in the following states: California, Maine, Michigan, Minnesota, Illinois, New Jersey, Massachusetts, Tennessee, South Carolina, Washington, Kentucky, Connecticut, Vermont, Missouri and Texas. 1 Bailey, Jurisdiction, § § 168, 169, 172a, 172b, 172c, and cases cited.

In *Settlemier* v. *Sullivan,* 97 U. S. 444, 448, Mr. Justice Field, speaking for the court, said: "We do not question the doctrine that a court of general jurisdiction, acting within the scope of its authority—that is, within the boundaries which the law assigns to it with respect to subjects and persons—is presumed to act rightly and to have jurisdiction to render the judgment it pronounces, until the contrary appears. But this presumption can only arise with respect to jurisdictional facts, concerning which the record is silent. It cannot be indulged when the evidence respecting the facts is stated, or averments respecting them are made. If the record is silent with respect to any fact which must have been established before the court could have rightly acted, it will be presumed that such fact was properly brought to its knowledge. But if the record give the evidence, or make an averment with

respect to a jurisdictional fact, it will be taken to speak the truth, and the whole truth, in that regard; and no presumption will be allowed that other and different evidence was produced, or that the fact was otherwise than averred. 'If, for example,' to give an illustration from the case of *Galpin* v. *Page,* 18 Wall. 366, 'it appears from the return of the officer or the proof of service contained in the record that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at another and different place; or if it appear in like manner that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also.'" *Applegate* v. *Lexington & Carter County Mining Co.,* 117 U. S. 255, 270.

But this is not true in case of service by publication. In that case, no statute forbidding, parol evidence may be received to prove publication of notice; and if the decree or judgment does not exclude the conclusion, the presumption is that sufficient and competent evidence was before the court to sustain its findings as to the publication of notice. *McLain* v. *Duncan,* 57 Ark. 49, 53; *Scott* v. *Pleasants,* 21 Ark. 364; *Porter* v. *Dooley,* 66 Ark. 1; 1 Bailey, Jurisdiction, § 172g, and cases cited.

Where the statutes require jurisdictional facts in certain cases to appear of record, and they do not so appear, no presumption is indulged in favor of the jurisdiction of the court. *Gregory* v. *Bartlett,* 55 Ark. 30, is an illustration. That was a suit brought under the "overdue tax act." The statute required the clerk, upon the filing of the complaint, to enter an order on the record requiring all persons having any right or interest in the land described in the complaint to appear in court within forty days thereafter, then and there to show cause, if any they can, why a lien should not be declared on said lands for unpaid taxes, and why said lands shall not be sold for nonpayment thereof, and to cause a copy of such order to be published in a certain time and manner. The clerk failed to enter the order on record, and it was held that the court acquired no jurisdiction, and the proceedings in the case were void, although the order was duly published. *Dick* v. *Foraker,* 155 U. S. 404.

In *Beidler* v. *Beidler,* 71 Ark. 318, 74 S. W. Rep. 13, two of the defendants, being nonresidents, were not served with summons. No warning order for them to appear was made on the complaint, as the law requires, though one was published. The court in that case said: "The statute provides that, after it is shown that a summons cannot be served upon a defendant, 'the clerk shall make upon the complaint an order warning such defendant to appear in the action within thirty days from the time of the making the order.' Sand. & H. Dig., § 5679. This court has repeatedly held that a compliance with provisions like this is an essential prerequisite to the publication of a warning order, without which no jurisdiction as to such defendants can be acquired, and all proceedings as to them are void." But this statement was made in the case in which the clerk failed to make the warning order upon the complaint, when the case was here upon appeal, when the judgment of the court was directly attacked and must be limited to such cases. *Gregory* v. *Bartlett, supra,* is cited to sustain the statement. A comparison of the facts and statutes in the two cases and the reasoning of the court in *Gregory* v. *Bartlett* seem to support the statement.

In *Gallagher* v. *Johnson,* 65 Ark. 90, a doctrine not in harmony with previous rulings of this court, was announced. That case was an action of ejectment by appellants against appellee to recover the possession of certain lands. The appellee claimed the lands under a sale made under a decree rendered in a certain suit instituted under the "overdue tax act" to subject them to sale for the payment of taxes, penalty and costs due thereon. The warning order was entered on record as required by the act, and it was published, but in the affidavit made to prove publication "the affiant failed to state that his paper, in which the warning order was published, was a paper of *bona fide* circulation in the county for the period of one month next before the first insertion of said warning order therein." In this the affidavit was defective. The court held that this defect rendered the sale void, "the court not having acquired jurisdiction to decree the same," and cited *Lusk* v. *Perkins,* 48 Ark. 238, 2 S. W. 847; *Gibney* v. *Crawford.* 51 Ark. 34, 9 S. W. 309; and *Cross* v. *Wilson,* 52 Ark. 312, 12 S. W. 576. But these cases do not sustain the court.

The case first cited was an action to compel a constable to receive a county warrant in payment of a fine, and the second was

an action to compel a tax collector to receive county warrants in payment of taxes. The defense in both cases was that the county court had made an order requiring all persons holding county warrants to present the same to the court within a specified time, and that the warrants in question had not been presented within such time, and were therefore not receivable for any purpose. The order calling in warrants in the first case was held to be of no effect because it was not published in the manner prescribed by law, and in the other case there was no legal evidence of the publication. In both cases the court held that the county court, in calling in county warrants, acted under a special statutory authority, which must be strictly pursued, and, unless notice of the order making the call is given in the manner prescribed by the statute, the order is a nullity as to all warrants not presented in obedience to the call; and in the latter case it was held that where the statute prescribes the manner in which the notice must be proved, it cannot be shown in any other manner.

The reasons upon which these cases are based are apparent. When county warrants are called in by the county court, the statute provides that it shall be the duty of the court to examine such as shall be presented, and to reject such part thereof as in its opinion the county is not justly and legally bound to pay; and, as to the warrants not presented, no action of the county court is required, but the statute provides that persons holding the same "shall thereafter be forever debarred from deriving any benefits from their claims." Before this penalty can be inflicted upon such persons, it is evident that the conditions upon which it is imposed must first be shown. These conditions are: a certain order shall be made, a certain notice shall be given, and it must be proved by such evidence as the statute says shall be the only evidence of such fact. Hence this court held in the cases cited as it did.

*Cross* v. *Wilson,* the other case cited, was an action of ejectment. The plaintiff claimed title to the land in controversy under a commissioner's deed executed pursuant to a decree of the Pulaski chancery court against Barkman and Candler, foreclosing the state's lien for the purchase money. The statute in the case in which the decree was rendered provided that, if the return upon the process shows that the defendant is not found in the county,

or is dead, "the clerk, upon the application of the prosecuting attorney, shall make and enter on the record an order which shall contain the title of the suit, the date and amount of the note or bond proceeded upon, and a description of the land upon which the lien is sought to be enforced, and warn the defendant to appear and make defense thereto on the first day of the next term of such court that commences more than sixty days from the date of such order." "A summons was issued, to which the sheriff made return, that Barkman was dead, and that Candler did not reside in his county, and, from what he could learn, was also dead." Thereupon the following order was published (omitting caption): "The defendants, the legal representatives of E. M. Barkman and of James R. N. Candler, are warned to appear in this court within thirty days and answer the complaint of the plaintiff, the State of Arkansas, for use of the school fund. [Signed] D. P. Upham, Clerk." The order that the statute required to be made in order to give the court jurisdiction was not made. The court said: "The record of the cause in which the decree relied upon as the foundation of the appellant's title was rendered shows that it was based upon a warning order which does not state material facts required by the statute, and that proof of its publication is fatally defective. The decree was therefore void."

Porter v. Dooley, 66 Ark. 1, is in conflict with Gallagher v. Johnson, supra, and in part overrules it. In that case an effort was made to set aside a decree confirming a tax title because it did not appear that the magistracy of the justice of the peace, before whom the proof of publication of the notice of the pendency of the proceeding to confirm was sworn to, was not certified to by the clerk of the county court, as required by the statute. This court held that the decree of confirmation was not void on collateral attack, the decree not excluding the conclusion that evidence other than that objected to was before the court upon the rendition of the decree. This conclusion was based, in part, upon the following quotation from the opinion in Scott v. Pleasants, 21 Ark. 364: "But it does not follow that the decree, though reversible upon appeal, and for error on its face, must be held void, and consequently be disregarded when introduced collaterally as evidence in an action of ejectment. The decree of the court was made upon a matter over which it had jurisdiction, as held in

*Evans* v. *Perciful,* 5 Ark. 43.   *   *   *   A decree *pro confesso* on constructive notice that is defective is as good as a like decree upon insufficient personal service, and such decree, when made final, cannot be collaterally questioned.   *   *   *   The court rendering the decree under consideration passed directly upon the evidence of publication of the notice; that was one of its clearest prerogatives, and, though it may be admitted that the court wrongfully decided, its decision was simply an interpretation of the law that could have been corrected if made subject of direct review in this court."

The rule as to the impeachment of judgments of courts of competent jurisdiction were held to be applicable to decrees rendered in "overdue tax proceedings" in *McCarter* v. *Neil,* 50 Ark. 191.   In speaking of the jurisdiction acquired by courts under the "overdue tax act," this court in that case said: "Now, authority over the *res* was conferred on the   *   *   *   court by the act of March 12, 1881, entitled 'An act to enforce the payment of overdue taxes.'   And authority over the landowner was acquired by the filing of the complaint, stating that taxes were due on this particular tract, and by the publication of the required notice, which took the place of ordinary process to bring the parties into court.   Actual seizure and possession of the land by an officer of the court were not directed, but the mere bringing of the suit was by law made equivalent to a seizure, being the open and public exercise of dominion over the land for the purposes of the suit."

And it further said in the same case: "Whether the tax decree [that is a decree rendered in a proceeding under the 'overdue tax act']   *   *   *   was open to collateral attack, and could be treated as a nullity, depended on the circumstances whether or not the court which rendered it had jurisdiction over the subject-matter and over the parties concerned.   For mere errors and irregularities, the judgment could be assailed only in a direct proceeding; that is, by petition in the same case to set aside, or by some proceeding in the nature of a review on error."

As to mere irregularities, this court, in *Webster* v. *Daniel,* 47 Ark. 131, held: "Courts can acquire jurisdiction over a defendant only by service of summons, either actual or constructive, or of some other process issued in the suit, or by his appearance to the action in person or by attorney.   And objections for mere

irregularity in the process or in the manner of its service must be made in the action. They cannot be set up in a collateral proceeding. When a warning order from a justice of the peace has been properly published, the failure to make proof of the publication by the person and in the form prescribed by law is a mere irregularity, which will not defeat the jurisdiction, and cannot be taken advantage of in a collateral proceeding."

Our conclusion is that the defect in the affidavit made to prove publication of the warning order in this case was a mere irregularity, which did not affect the jurisdiction of the court or the validity of the decree in question.

Decree affirmed.

BUNN, C. J. (dissenting.) This opinion is confined to the question as to the sufficiency of the proof of publication of the notice in the overdue tax proceeding referred to in this record. Previous to the decision of this court in the case of *Borden* v. *State,* 11 Ark. 519, rendered at the January term, 1851, it appears that this court had held that where the record in any case failed to show affirmatively a previous notice, express or implied, the judgment was an absolute nullity. These decisions were overruled in *Borden* v. *State,* where it was announced that "when the judgment of a court of record and of general jurisdiction is collaterally drawn in question, jurisdiction of the subject-matter appearing, jurisdiction of the person is not a legitimate subject of inquiry in such collateral proceeding."

In a few years, when the extreme doctrine of that case had begun to be felt in the litigation of the country, towit: on the 17th of February, 1859, the following statute on the subject was enacted by the legislature, towit:

"An act to prevent fraud and oppression, under color of judicial process:

"Section 1. Be it enacted by the General Assembly of the State of Arkansas. That all judgments, orders, sentences and decrees, made, rendered or performed, by any of the courts of this state, against anyone without notice, actual or constructive, and all proceedings had under such judgments, orders, sentences or decrees, shall be absolutely null and void.

"Sec. 2. Be it further enacted: That in àll cases where it appears, from a recital in the record of any such court, that such notice has been given, it shall be evidence of such fact."

No one can call in question the power of the legislature to enact this statute. From the language of the first section, it plainly appears that no presumption in favor of the validity of a judgment can arise, but without recitals at all as to notice it would be absolutely null and void, and this would necessarily be the result, whether on direct or collateral attack; but it is provided in the second section that, when it is recited in the record of the judgment that such notice has been given, it (such recital) shall be evidence of the fact. Whether this evidence is conclusive or not is a question I need not discuss here. It suffices to say that, from and after the passage of that act, no presumption in favor of the validity of judgment could be indulged, unless there should be in the record a recital to the effect that such notice had been given, or words to that effect. Thus, where the record is silent as to notice, no such presumption arises, notwithstanding the rule may be different·in the absence of a statute like ours.

In *Boyd* v. *Roane,* 49 Ark. 397, in construing the statute I have quoted, this court said: "Since the enactment of the statute declaring all judgments pronounced by any of the courts of this state against anyone without notice absolutely void, the doctrine laid down in *Borden* v. *State,* 11 Ark. 519, that the judgment of a superior court rendered without notice is not void, but only voidable, has been adhered to so often in its application to analogous cases that it has become a rule of property not to be disturbed by the courts."

So far it would appear that the court was on the eve of overturning the statute itself, but, continuing, it said: "But this consideration (that a habitual ignoring of the statute had become a rule of property), does not hinder·the application of the statute to judgments pronounced in adversary suits, either in law or equity; and such judgments without notice, whether against infants or adults, are absolutely void." Practically, all suits are adversary suits, for what may be termed nonadversary suits are not suits at all, in the common acceptation of the term, such as *ex parte* proceedings where adverse parties are not contemplated, and therefore no notice is required; in friendly suits where the

parties waive all questions of notice, and in proceedings in the probate courts, where the only notice required of the pendency of settlements is given by the clerk; and perhaps in some other peculiar proceedings. But the great body of our litigation constitutes adversary suits, and all must fall under the rule of the statute that there is no presumption in favor of the validity of judgments of safer courts of record or any other courts unless the recitals are to the effect that notice has been given. This rule applies even in cases coming under the ordinary jurisdiction of such courts. It has always been the rule in cases of constructive notice, that validate the judgment rendered thereon, and that there is no presumption in such cases in favor of the judgment. The doctrine was so held in *Galpin* v. *Page,* 18 Wall. 350; *Gibney* v. *Crawford,* 51 Ark. 51; *Cissell* v. *Pulaski County,* 10 Fed. Rep. 891.

In the latter case the court held that the affidavit to prove the publication of a legal notice in judicial proceedings, must show that the paper in which the publication was made is one authorized to publish such notices, and that affiant sustains the relation to the paper required by the statute to authorize him to make the affidavit. When it is sought to conclude a party by constructive service by publication, every fact necessary to exercise jurisdiction based on such service must affirmatively appear in the mode prescribed by statute. If the proof of publication contained in the record is defective, it is not competent for any other court to receive parol testimony to supply the omission. The recital of due notice in the record of a proceeding under special statutory authority must be read in connection with that part of the record which gives the official evidence prescribed by statute. No presumption will be allowed that other and different evidence was produced; and, if evidence in the record will not justify the recital, it will be disregarded.

The statute which provides for the manner of giving notice in cases of calling in county warrants for examination, cancellation and reissue is the very same as that applicable to overdue tax cases, and the proof of publication is exactly the same in both cases. In fact, the subject of legal notice and the publication thereof is a general statute applicable to all cases of constructive notice. *Gallagher* v. *Johnson,* 65 Ark. 90, was therefore in strict accordance with all the leading cases on the subject. Where there

is no presumption in favor of the judgment, as is the case where special jurisdiction is conferred upon the court, the court has no jurisdiction, and can take none, unless the proof of publication and the notice are in strict conformity to the statute, and the essential facts conferring jurisdiction must affirmatively appear; otherwise the judgment rendered thereon is a nullity absolutely, and cannot withstand attack, either directly or collaterally, because the defect is jurisdictional.

Our attention is called to the case of *Porter* v. *Dooley, 66* Ark. 1, 49 S. W. 1083, and it is contended that that case overturns *Gallagher* v. *Johnson, supra.* The proof of publication required to be made was entirely different in some important particulars from the provisions of the general statute on the subject. That was a case of confirmation of tax titles, and came under the provisions contained in Mansfield's Digest. In that case, after stating that section 578 of Mansfield's Digest governed the proof of publication, this court said: "It will be observed that section 578 of Mansfield's Digest does not preclude the idea that the mode of proof of publication of the notice is exclusive of other evidence of the fact of publication, but only says that, when made as therein required, it shall be taken and considered as sufficient evidence of the fact of publication, the date and number of insertions, and the form of such notice." The certificate of the official character of the justice of the peace before whom the proof of publication should be made had not been made in that case, and the court simply said that the proof of the official character of the justice of the peace was not the only proof.

The case of *Settlemier* v. *Sullivan,* 97 U. S. 444, cited by the court, in my opinion, has very limited applicability to the case at bar, if any at all. It was a case in which a former case involved had been based upon a sheriff's return of an ordinary summons. The return of the sheriff failed to show that the sheriff had used ordinary diligence to find the defendant, but did state, however, that he had left a copy of the summons with defendant's wife at their place of abode. *Held,* That the failure to state what effort the sheriff had made to serve the summons upon defendant, or what other service had been had, was fatal to the judgment founded thereon. That was a case in which the trial court was in the exercise of its ordinary jurisdiction, and upon a defective service as shown by the return. Other requirements of the statute

in making such service and the return thereof were not contained in the recitals, and there was not only no presumption that these conditions had been complied with, but a presumption that they had not been. The case has no application to a case by constructive summons in this state.