## WALLACE *v.* HILL.

### Opinion delivered May 20, 1918.

1. TAXATION—LAND OF THE UNITED STATES—HOMESTEAD.—Land of the United States becomes subject to taxation by the State when a final certificate is issued under the homestead act of Congress, entitling the holder to a patent.
2. SAME—OVERDUE TAX DECREE—PRESUMPTION.—Since the overdue tax act (Acts 1881, p. 63) did not require the proof of publication of the warning order to be entered by the clerk upon the record, the presumption will be indulged, on collateral attack upon a decree rendered thereunder, that the proof of publication of the warning order was made in the manner required by the statute.
3. SAME—OVERDUE TAX DECREE—PRESUMPTION.—Where an overdue decree recited that the warning order was published by two in-

sertions in a certain newspaper published in the county before the first day of the term of the court which rendered the decree, it will be presumed on collateral attack that such newspaper had a *bona fide* circulation in the county for a period of one month before the day of the first publication of the warning order, as required by the statute.

4. SAME—OVERDUE TAX SALE—PRESUMPTION OF REDEMPTION.—Where lands were sold to the State under the overdue tax sale, and for thirty-four years thereafter the State, through its county officers, assessed, levied and collected the taxes on such lands in the names of the original owners and their successors, it will be presumed that such lands had been redeemed from the Commissioner of State Lands by the original owners.

5. EJECTMENT—CONFLICTING PRESUMPTIONS—BURDEN OF PROOF.—Where the plaintiff in an action to recover land relies upon the presumption of regularity from a deed executed by the Commissioner of State Lands, conveying lands sold to the State under the overdue tax act (Acts 1881, p. 63), and the defendant upon the presumption of redemption from such sale arising from the payment of the taxes for more than thirty-four years, the presumptions stand in equilibrium, and the plaintiff must show that he has the real title.

Appeal from Benton Chancery Court; *Ben F. Mc-Mahan*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellant brought three separate actions in the Benton Circuit Court; one against E. C. Hill; one against G. W. Wilmoth; one against A. P. Ash. Appellant alleged that he was the owner of the particular tract of land, described in each of his complaints, and that each of the defendants named in the respective complaints was in the wrongful possession of the land described. Appellant in each complaint alleged that he was the owner by virtue of a deed executed for valuable consideration by the Commissioner of State Lands, on the 21st of March, 1916; that the lands thus deeded to appellant by the commissioner were forfeited for taxes and sold to the State on the 1st of February, 1882, under an overdue tax decree rendered by the Benton Chancery Court. That the commissioner appointed to execute the decree of the Benton Chancery Court did so according to law and made

his report to that court which was duly confirmed and executed a deed to the State which was approved by that court. Appellant exhibited with his complaint a deed from the State Land Commissioner for the land described in the respective complaints, and in response to a motion from defendants in each of the respective cases he exhibited as muniments of title the decree of the Benton Chancery Court under which the lands were sold and the report of the commissioner and the order of the court showing the approval and confirmation thereof.

The respective defendants in each of the separate suits answered denying all material allegations of the complaint and set up title in themselves to the lands claimed by plaintiff, and exhibited with their answers their muniments deraigning title through various mesne conveyances from the United States Government. Each alleged that he and those under whom he claimed had been in possession more than thirty years. Answers of each of the defendants also set up exceptions to the deed of the State Land Commissioner, and to the decree of the Benton Chancery Court, and the report of the commissioner which it is unnecessary, in view of the conclusion we have reached, to set forth here at length. We will refer to such of these as we deem necessary in the opinion.

Each of the answers was made a cross-complaint in the respective suits and set up a claim for improvements made by each of the respective defendants. They alleged that the taxes had been paid, and that the owners held receipts from the collector showing that same had been paid; and that there were no taxes due on the land at the time the suit for the overdue taxes was filed; and that the returning of said lands as delinquent for certain years was by mistake of the county clerk. They alleged that the decree of the Benton Chancery Court declaring the land forfeited for the non-payment of taxes was void and a cloud upon their title, and prayed that the same be canceled.

The appellant here, plaintiff below, in each of those suits filed a general demurrer to the answer and cross-complaint and also a reply denying the allegations and also exceptions to each of the defendant's muniments of title. In the reply plaintiff alleged that the matters and things set forth by the respective defendants in defense of plaintiff's claim were passed upon and settled against them in the overdue tax decree of the Benton Chancery Court above mentioned, from which there was no appeal, and that said decree was *res judicata* on the issues that the defendants attempted to raise in this case, and that their alleged defense was but a collateral attack on that decree.

Each cause on motion of the defendant therein was transferred to the chancery court. In that court each defendant was permitted, over the objection of the plaintiff, to amend his answer in which it was set up that officers of the State, the assessor, and the clerk of the county, caused said lands to be placed on the tax books for the years 1882 and 1883, and every year subsequent to the sale under the decree in the overdue tax suit, and that all taxes since said date have been duly paid; that State, county, school and road districts have received all taxes due on said lands which in equity is an abandonment of all rights of the State under and by virtue of the decree of the sale in overdue tax suits.

The undisputed evidence on behalf of the appellant proved that the lands in controversy were embraced in the overdue tax decree rendered by the Benton Chancery Court at its fall term, 1881, against certain lands in Benton County, and the report of the sale by the commissioner of those lands under the decree of the court, which report was duly approved and confirmed, shows that the lands were stricken off to the State. The appellant also introduced in evidence deed from the State Land Commissioner, conveying to appellant the lands in controversy, reciting that the lands were forfeited to the State for non-payment of the taxes and appeared on the records in the office of the State Land Commissioner as vacant

and subject to sale and that Lewis Wallace applied to purchase the same and paid into the treasury the sum of $50, the amount required to purchase the same under sections 4802 and 4803, Kirby's Digest; that the commissioner, by virtue of an act authorizing him to make deeds in certain cases, granted, bargained, conveyed, *et cetera,* all the right, title, and interest of the State to the land, describing it. This deed was executed on the 21st of March, 1916, and was filed for record in Benton County on the 27th of March, 1916.

Appellant introduced the deposition of W. F. Etman, who was the receiver of the U. S. Land Office at Harrison, Ark., and had in his custody the records of the original entries of lands in Benton County, Ark. These records show that the final certificate of entry of the lands in controversy had been issued before the filing of the suit for overdue taxes against these lands.

The testimony of Etman and the testimony of the county clerk of Benton County and the tax books and the muniments of title of the appellees show conclusively that the lands in controversy were listed, and were subject to taxation for the years the overdue tax suit was brought against them under which they were sold.

The testimony in the case of appellant against appellee Ash showed that the taxes had been paid by Ash and his predecessors in title on the land in controversy in that case every year since 1878. In the case of appellant against appellee Hill the testimony showed the taxes had been paid continuously since 1868, and in the case of appellant against appellee Wilmoth it was proved that the taxes had been paid continuously since 1872. In the latter case Wilmoth testified that he had been in possession of the land about fifteen years and had placed improvements on it which he valued at over $900.

The court rendered a decree in each case in favor of the defendant, dismissing plaintiff's complaint for want of equity. From the decree in each case an appeal was taken. Because of the precise similarity of the issues involved in these three cases, the same have been

consolidated here for the purpose of briefing and will be disposed of under one opinion. Other facts stated in the opinion.

*W. T. Selby* and *J. G. Wallace & Son,* for appellant.

1. These lands became subject to taxation when the final certificates were issued under the U. S. Homestead Act. 55 Ark. 398. This was long prior to the overdue tax suit. They were included in the overdue tax decree and sold, and the confirmation under that decree puts at rest all questions not affecting the jurisdiction of the court. 50 Ark. 188. That decree can not be attacked collaterally except for jurisdictional defects. 49 Ark. 336; 91 *Id.* 95. See also 55 *Id.* 30; 66 *Id.* 44, 398, 539; 53 *Id.* 445; 45 *Id.* 530; 57 *Id.* 423; 108 *Id.* 515.

2. The court had jurisdiction under Act. No. 39, Acts 1881. The court found that taxes were overdue and ordered the lands sold. They were sold and the report of the sale confirmed. That decree can not be attacked collaterally as the court had jurisdiction. Cases *supra.* The record discloses that due notice was given by publication in the "Weekly Advance" as required by law. All presumptions are in favor of the jurisdiction of the court. Overdue Tax Act, § 18, etc.; 50 Ark. 188, etc.

3. Appellant has *prima facie* title to the lands. Kirby's Digest, § 4807; 50 Ark. 190; 49 *Id.* 266; *Ib.* 336; 53 *Id.* 430. This *prima facie* presumption will stand until overthrown by a preponderance of the evidence. The policy of the law is to uphold overdue tax titles when the sale is regular as here.

4. The Betterment Act does not apply. 59 Ark. 474; 95 *Id.* 70; 10 *Id.* 460; 14 *Id.* 290; 23 *Id.* 19.

*Duty & Duty* and *W. S. Floyd,* for appellees.

1. The "Overdue Tax Act" was a special statute conferring special jurisdiction and there is no presumption in favor of the regularity of the proceedings, and the record itself must show jurisdiction as nothing is taken by intendment. Waples, Proceedings in Rem, § 89, p.

126; 2 Wall, 313; 8 How. 495; *Ib.* 336; 103 Ark. 446; 59 *Id.* 483; 123 *Id.* 189.

2. No notice was given as prescribed by the act. § § 2, 3, etc.; 65 Ark. 90; Mansf. Dig., § § 4356, 4359; 72 Ark. 101. Only two insertions were published in the "Advance" and not for thirty days as required by law. The court had no jurisdiction. 97 U. S. 444; 117 *Id.* 255; 57 Ark. 49; 56 *Id.* 1. The jurisdictional facts must appear of record. No presumptions are indulged. 55 Ark. 30; 105 U. S. 404; 74 S. W. 13; 48 Ark. 238; 18 Wall, 350; 51 Ark. 51. All of the proceedings here show want of jurisdiction. No notice. No entry of record showing that the complaint was filed. No record of warning order nor publication according to law. No record showing report of commissioner filed, nor that the report was open for inspection for thirty days, or that the lands were stricken off to the State or certified to county clerk and by him to the State. All these objections are more than irregularities, but they all go to the jurisdiction and the decree is null and void. 94 Ark. 122; 83 *Id.* 234; 97 *Id.* 76.

3. The deed from the land commissioner is void and not *prima facie* evidence of title. 37 Ark. 643; 37 Cyc. 1436; 14 Pac. 479; 49 Mo. 307; 31 Ark. 314; 99 Pac. 57; 27 Ark. 226.

4. Appellant is estopped. 72 Ark. 101; 140 U. S. 634; 120 Fed. 819; 134 Wis. 197.

WOOD, J., (after stating the facts). The records show that the lands in controversy between appellant and appellee Hill were entered as a homestead in 1872, and that final certificate was issued in 1879; that the lands in the case of appellant against appellee Ash were entered as a homestead in 1873, and that final certificate was issued on this land in 1878; and that the lands in the case of appellant against appellee Wilmoth were entered by cash entry August 22, 1860, and the evidence shows that the final certificate would bear that date. These lands were, therefore, subject to taxation before the overdue

tax decree of the Benton Chancery Court (December 12, 1881) was rendered against them.   *Burcham* v. *Terry,* 55 Ark. 398.

The lands in controversy here were embraced in that decree.   If the court had acquired jurisdiction to render the decree against them under the statute, then a title based on such a decree is invulnerable to collateral attack and must prevail here unless the appellant is estopped, or has failed to comply with the rule as to the burden of proof.

(1)   Did the court have jurisdiction?

The overdue tax decree of Benton Chancery Court against these lands recites: "The court doth further find that, after filing of the complaint by the plaintiff in this cause in the office of the circuit clerk of Benton County, said clerk caused an order to be made of record in said cause on the filing of said complaint, warning all persons having any right or interest in said lands herein described to appear within this court within forty days from the date of said order, which was dated August 9, A. D., 1881, and then and there show cause, if any they could, why lien should not be declared on said lands for unpaid taxes and why said land should not be sold for the payment thereof, and the court doth further find that the clerk of this court caused a copy of said order to be published by two insertions in the "Weekly Advance," a newspaper printed and published in Benton County before the first day of this term of court."

The undisputed proof shows that a warning order, in the exact language prescribed by the statute and describing the lands in controversy, was duly entered on the record of the chancery court of Benton County, by the clerk of that court, as required by section 2 of the overdue tax law approved March 12, 1881.

In *Clay* v. *Bilby,* 72 Ark. 101, we held that "a defect in an affidavit made in proof of the publication of the warning order required by the overdue tax law was a mere irregularity which does not affect the jurisdiction of the court or the validity of its decree in such pro-

ceedings." In so holding this court overruled the case of *Gallagher* v. *Johnson,* 65 Ark. 90, which had decided to the contrary. While the overdue tax act requires the warning order to be entered of record, there is no such provision as to the proof for publication. In *Clay* v. *Bilby, supra,* we said: "No statute forbidding, parol evidence may be received to prove publication of notice; and if the decree or judgment does not exclude the conclusion, the presumption is that sufficient and competent evidence was before the court to sustain its findings as to the publication of the notice." See also, *Fiddyment* v. *Bateman,* 97 Ark. 76.

It was within the power of the Legislature to prescribe what facts should appear of record in order to give the court jurisdiction. The Legislature provided that the warning order should appear of record, (section 2, Act 39, Acts 1881) hence this was essential to give the court jurisdiction, as was held in *Gregory* v. *Bartlett,* 55 Ark. 30.

It is a well established rule that has been often adhered to by this court that where a court exercising general jurisdiction under the Constitution has been given special statutory jurisdiction in certain matters, and the manner in which such jurisdiction is to be exercised is pointed out by the statute, the record of such court must show the jursdictional facts. The statute in such cases must be strictly pursued and the jurisdiction must be made to appear in the mode pointed out by the statute. No presumption as to jurisdiction in such cases will be indulged. *Reeves* v. *Conger,* 103 Ark. 446; *Oliver* v. *Routh,* 123 Ark. 190, and cases there cited.

But the Legislature did not see fit to require that the proof of publication of the warning order should be entered by the clerk upon the record. On the contrary, the Legislature provided as follows: "The strict rules of law relating to the jurisdiction of courts in special statutory proceedings shall not be applied to proceedings under this act; but all presumption shall be in favor of the jurisdiction of the courts in which they are had, and

of their regularity in all respects." Sec. 18, Acts 1881, p. 72. Thus by express provision the Legislature enacted that the above rule should not apply to overdue tax proceedings.

Therefore, since the statute does not require that the proof of publication be entered of record, the presumption will be indulged, on collateral attack upon the decree of the court, that the court found that the proof of publication of the warning order was made in the manner required by the statute. The recitals of the decree show that the court found that the warning order was published by two insertions in the "Weekly Advance," a newspaper printed and published in Benton County, before the first day of the term of the court which rendered the decree. It will be presumed that the court also found that the "Weekly Advance" had a *bona fide* circulation in Benton County and had been regularly published in that county for a period of one month next before the day of the first publication of the warning order.

Learned counsel for the appellees are mistaken in saying that the recitals of the decree show that the court found otherwise. There are no recitals in the decree showing what the court found in this respect, and it must therefore, be presumed that the court found the facts to exist which were essential to the court's jurisdiction to render its decree. *Scott* v. *Pleasants,* 21 Ark. 364; *Porter* v. *Dooley,* 66 Ark. 1; *Clay* v. *Bilby, supra; Fiddyment* v. *Bateman, supra;* see also *Applegate* v. *Lexington and Carter Mining Co.,* 117 U. S. 802 (Lawyers Ed.).

We conclude, therefore, that the Benton Chancery Court had jurisdiction to render the decree in the overdue tax suit against the lands in controversy and that its decree is impervious to collateral attack. The matters set up in appellees' answer and cross-bill constitute a collateral attack upon that decree and do not render it void.

(2)   Is appellant estopped?

Appellant under his deed of March 21, 1916, acquired all the title and rights incident thereto which the

State had to the lands in controversy. The issue here, therefore, involves an inquiry as to whether or not the State, at the time she sold the lands to appellant, could have maintained a suit against the appellees for the possession of these lands. These lands had been entered as homesteads and the appellees and their predecessors in title had paid the taxes continuously, from the time that the final certificates of entry were issued to the institution of these suits, on one of the tracts 56 years, on another 38 years, on the other 37 years. The presumption in the absence of proof to the contrary is that the appellees and those under whom they claimed had been in possession continuously from the time of their homestead entry. It had been thirty-four years from the date when the lands were stricken off to the State at the sale under the overdue tax decree until the appellant obtained his deed from the State Land Commissioner.

The State through her taxing officers placed these lands, or permitted them to remain, on the tax books of Benton County and assessed and collected taxes thereon. Section 11 of the Overdue Tax Act, among other things, provides that: "The owner of any lands thus sold may redeem from the purchaser at any time within the period fixed by law for the redemption of lands sold for taxes," etc. Section 13 provides: "The owner, in case of a sale to the State, may redeem within the time prescribed by section eleven of this act, by making the payment therein required to the Treasurer of the State, who shall thereupon give him a certificate showing the amount of such payment, and the purpose for which it is paid, which shall be by him filed with the Commissioner of State Lands, who shall issue to him, under his seal of office, a certificate showing the fact of such redemption" et cetera.

The State could only act through her taxing officers. These officers, the clerk, assessor and collector, had no authority to place and keep these lands on the tax records for the assessment, levy and collection of taxes unless the same had been redeemed from the State as required

by the statute. While there is no proof in the record that the lands had been redeemed, yet under the above undisputed facts it will be presumed that the lands had been redeemed. After a lapse of thirty-four years during all of which time the State each year through its officers had assessed, levied and collected the taxes in the names of the owners listed upon the tax books, the State will not be heard to say that the acts of her officers were unauthorized and that the lands had not been redeemed as authorized by the overdue tax act. As is said in *Martin* v. *Barbour,* 140 U. S. 646, "No more manifest case for the interposition of a court of equity can be imagined. The State is bound by the acts of her officers in placing the lot on the tax books for the years 1885 and 1886, and receiving from the appellees the taxes for those years. Equity will treat the transaction as a waiver of the prior supposed forfeiture, and will regard the tax paid for 1885 and 1886 as so much paid toward redemption, and will permit the payment of the rest. The appellant took his deed for the land in the same condition in which the State held it, and subject to the same equities and defenses. The State, having created its bureau of taxes, is bound to see to it that its officers impart correct information to parties dealing with it and do not mislead them."

The presumption that the lands were redeemed from the State and that the Land Commissioner had issued a certificate to the owners showing redemption under the statute is supported in principle by the doctrine announced by this court in the recent case of *Carter* v. *Goodson,* 114 Ark. 62, where we held: "The presumption of a grant from long continued possession is one of fact, and it is for the jury or court trying the case to determine the effect of the evidence in support of the presumption."

After a period of thirty-four years of continuous possession and a payment of taxes, during all of which time the State received her portion, in the absence of affirmative proof that the lands had not been redeemed,

the State should not be permitted to repudiate these acts of her officers. To do so would enable her to take advantage of her own wrong.

It is a well established doctrine, and one consistently adhered to by this court, that the State is not estopped by the unauthorized acts of her officers. The State is only liable to the extent of the power actually given to its officers and not to the extent of their apparent authority. This doctrine was announced by this court in one of its later cases as follows: "It is settled by decisions of this court that the State can not be estopped to assert title to its lands on account of unauthorized acts of its officers." *Woodward* v. *Campbell,* 39 Ark. 580; *Pulaski County* v. *State,* 42 Ark. 118. In one of these cases the court said: "The State is liable only to the extent of the power actually given to its officers, and not to the extent of their apparent authority, and all who deal with a public agent must at their peril inquire into his real power to bind his principal." *Board of Directors St. Francis Levee District* v. *Fleming,* 93 Ark. 495. In this case the Board of Directors of the St. Francis Levee District had foreclosed a lien for the levee taxes on lands in the district and had purchased the lands at the sale. Afterwards its officers assessed and collected levee taxes on the same lands from the former owner. It was contended by such owner that the acceptance of the taxes by the officers of the levee district estopped the district and those claiming under it from asserting title under the foreclosure sale. But in that case there was no redemption from the foreclosure sale for levee taxes and could not be, for, as stated in the opinion, "at that time the statute provided no period for the redemption of lands sold for levee taxes for that district." The levee district in that case at the foreclosure sale having acquired the absolute title, of course neither it nor its subsequent grantee could be estopped by the acts of the officers in thereafter assessing and collecting the levee taxes from the former owner of the lands for the reason that their acts in so doing were wholly unauthorized.

That case is distinguished from the case at bar in the fact that here the State by sale under the overdue tax act acquired a title which under that statute was subject to redemption, and its title did not become absolute until the period of redemption had expired. In the meantime the tax officers placed the lands back upon the tax books in the name of the former owners and proceeded thereafter to assess and collect the taxes, which as we have seen they were only authorized to do in case of redemption.

The case of *Martin v. Barbour, supra,* was cited and relied on in the brief of counsel for appellee in the case of *Levee Dist. v. Fleming, supra,* to sustain the doctrine of estoppel against the district. The case was not discussed or even referred to in the opinion, showing that the court rested its opinion in the Fleming case upon the ground that under the statute which governed that case there could not be any redemption. Hence it was unnecessary to decide the question now under consideration.

Inasmuch as the lands could have been redeemed under the statute which applies here, it will be presumed from the conduct of the officers through all these years that they were redeemed, and that the officers were therefore acting within the express scope of the authority given them. That the State can be and will be estopped by the conduct of its officers acting within the express scope of their authority is a doctrine as well settled as the converse thereof.

(3) Did appellant show by a preponderance of the evidence that he had the real or superior title to appellees?

Since the undisputed evidence shows that the appellees and their predecessors in title have been in possession of these lands through all these years paying the taxes thereon, the burden was certainly upon the appellant to show that the lands had not been redeemed. The appellant had to recover upon the strength of his own title, and the burden of showing title in him is not discharged by the exhibition of a deed from the State Land

Commissioner which does not overcome the undisputed proof above mentioned, raising the presumption of redemption. The Land Commissioner's deed was *prima facie* evidence of title in the appellant, carrying with it the presumption that the lands had not been redeemed. But the tax records of Benton County showing that these lands had been continuously listed for taxation in the names of the former owners since the overdue tax decree and that appellees and their grantors had paid the taxes and been in possession for all these years raised the presumption that the lands had been redeemed.

It occurs to us that the presumption in favor of the appellees under the circumstances is of a higher nature than the conflicting presumption in favor of appellant. Mathews, Presumptive Evidence, p. 59. The presumption is that public officers do as the law and their duty require them. Lawson on Presumptive Evidence, rule 14, p. 67, and cases cited. But even if it could be said that the presumption of no redemption arising from the State Land Commissioner's deed was of equal dignity with the presumption of redemption arising from the tax records of Benton County, and the possession and payment of taxes by the appellees, and that these conflicting presumptions neutralized each other, then, the burden being upon appellant to show real title in himself and a better right to possession than had the appellees, he must necessarily fail. Such by analogy, at least, is the doctrine announced by this court in *Winn* v. *Whitehouse,* 96 Ark. 42, where we said: "Between these conflicting presumptions of equal statutory dignity and probative power, the one who has the burden must fail unless he brings forward proof to overcome the presumption that stands in the way of his contention. The presumptions stand in equilibrium, so to speak, and appellants could only 'turn the scale' in their favor by proof. Therefore, appellee being in possession under a *prima facie* title, appellants, if they succeed in ousting him, must overcome his *prima facie* title by showing not only that they also have *prima facie* title, but that they have more than this, i. e., the real title."

It follows that the decrees of the chancery court dismissing appellant's complaint for want of equity are correct and they are, therefore, affirmed.

McCULLOCH, C. J., (dissenting). This court is thoroughly committed to the rule that the State in its sovereign capacity is not estopped to assert claim to its own property by the unauthorized acts of its officers. *Woodward* v. *Campbell,* 39 Ark. 580; *Pulaski County* v. *State,* 42 Ark. 118; *Board of Directors* v. *Fleming,* 93 Ark. 495.

Indeed the force of this wholesome rule is recognized in the opinion of the majority in this case, but its application to the facts now before us is denied upon grounds that seem to me to be entirely untenable. In other words, the majority try to distinguish the line of cases cited above, but I think there is no sound distinction. It is true that in the case of *Board of Directors* v. *Fleming, supra,* there existed no right of redemption from the sale to the levee district, whilst in the present case there was a statutory right of redemption from the State, but this does not prevent the application of the rule, for the title to the land had passed to the State under the overdue tax sale, and it was merely a privilege of redemption which was conferred by the statute, and that privilege could only be exercised after the forfeiture to the State had been certified by an application to the Commissioner of State Lands, and it depended upon an ascertainment by that officer of the applicant's right of redemption. Kirby's Digest, secs. 4879-4886.

The right of redemption given under the Overdue Tax Act of 1881 (p. 63) was limited to a fixed period, and was to be exercised by payment to the commissioner who made the sale. In no event were the local assessing officers authorized to perform any act in the redemption of the lands from the overdue tax sale. Their acts in putting the lands on the tax books were wholly unauthorized, and the State was not bound thereby if any force at all is to be given to the rule on that subject so

well established by decisions of this court. Neither is there any place in this case for the exercise of presumptions that the title obtained by the State under the overdue tax sale ever passed out of the State or was in any manner restored to the original owners. The facts are undisputed and are matters of record, and there is no circumstance upon which to build a presumption except the bare fact that the owners continued in possession of the lands after the overdue tax sale and paid taxes thereon. The doctrine of *Carter* v. *Goodson*, 114 Ark. 62, does not apply.

In this case it would be a great hardship, apparently, to deprive the original owners of their lands which they have occupied so long, but it seems to me that in order to give them any relief it would be necessary to disregard settled rules of law, and this I am unwilling to do. I dissent, therefore, from the conclusion announced by the majority, and I am authorized to say that Mr. Justice SMITH shares my views on the subject.