CHICAGO LAND AND TIMBER COMPANY *v.* DORRIS.

Opinion delivered June 30, 1919.

1.  TAXATION—TITLE UNDER OVERDUE-TAX ACT.—Where land was sold to the State in 1883 under the overdue-tax act of March 12, 1881, and was not redeemed within the time allowed, plaintiff as remote grantee of the tax purchaser acquired a valid title.

2.  QUIETING TITLE—DAMAGES ALLOWED.—A decree in a suit to quiet title by one holding a valid tax title properly adjudged that she recover damages for defendant's unlawful acts in claiming the growing timber and posting it, thereby preventing plaintiff from selling it.

3. LOGS AND LOGGING—TIMBER AS PART OF REALTY.—Growing trees
constitute a part of the realty, and their conveyance is a convey-
ance of an interest in the land itself.

Appeal from Cleveland Chancery Court; *John M.
Elliott*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Sarah E. Dorris brought this suit in equity against
the Chicago Land and Timber Company to quiet her title
to a certain forty-acre tract of land in Cleveland County,
Arkansas, and to recover damages for the value of cer-
tain timber cut and removed therefrom by the defendant.

The material facts are as follows: The land in con-
troversy was sold by virtue of a decree of the chancery
court in the exercise of the jurisdiction conferred upon
it by the Overdue Tax Law. The sale was made in 1883,
and, no one appearing and bidding thereat, the land was
stricken off to the State and duly certified to it. There
was no redemption within the time allowed by law, and
on the 14th day of March, 1907, the State of Arkansas
conveyed the land by deed to William Kilpatrick. On
the 17th day of October, 1911, William Kilpatrick by a
deed conveyed the land to G. W. Stover. On the 10th
day of October, 1913, G. W. Stover and wife conveyed
the land to the plaintiff, Sarah E. Dorris. All of these
deeds were duly filed for record in the proper office. On
the 26th day of May, 1884, under an order of the probate
court, the forty-acre tract of land in controversy was
declared vested in Emma J. Bearden as the widow of
J. T. Bearden, deceased. She conveyed the land by war-
ranty deed to Robert F. Bearden, and on October 26,
1900, Robert F. Bearden conveyed the land to J. W.
Bearden. On January 25, 1907, J. W. Bearden conveyed
the timber on the land to the Grant Lumber Company
and gave it ten years within which to cut and remove
the timber. On December 2, 1911, J. W. Bearden con-
veyed the land to G. W. Stover. No mention was made
in the deed that the timber had been sold. The Chicago
Land and Timber Company claimed title to the timber
by *mesne* conveyance from the Grant Lumber Company.

A. G. Jones paid the taxes on the land for 1881. J. W. Bearden paid the taxes from 1885 to 1901, inclusive. The land appears on the tax books from 1902 to 1905, inclusive, in the name of the State, and no taxes were assessed or paid. J. W. Bearden paid the taxes for 1906 and 1907. William Kilpatrick paid the taxes for 1908, 1909 and 1910, and G. W. Stover paid the taxes for 1911 and 1912. For the year 1908, and all subsequent years, the timber on the land was assessed and the taxes thereon paid by the Chicago Land and Timber Company and its grantors. It appears from the record that the tax records of the county were burned except the tax books of 1881, and from 1885 to 1889, both inclusive.

Evidence was adduced by the plaintiff tending to show the amount and value of the timber cut from the land by the defendant.

The chancellor found for the plaintiff and a decree was entered accordingly. The defendant has appealed.

*W. D. Brouse,* for appellant.

1. From the depositions and agreed statement of facts it appears and is shown that J. W. Bearden held possession of the land under *mesne* conveyances from May 26, 1884, to the time of the conveyance of the timber to the Grant Lumber Company on January 25, 1907, a period of 23 years, and all the deeds were of record at the time he sold to G. W. Stover on December 2, 1911, and that during all that time Bearden lived on the land and cultivated it, claiming it under said deeds and holding open actual adverse possession, and that the taxes were paid by Bearden and his grantees for more than 20 years, except for the years 1902 to 1905, when the land was marked "State," and no taxes were paid. The "State" was estopped by putting the land back on the tax books and accepting the taxes. It will be presumed that the land has been redeemed under the Overdue Tax Act, Acts 1881, 69-70.

2. In ejectment plaintiff must recover on the strength of his own title. Where the State has levied

and collected taxes for 34 years after forfeiture for over-due taxes the presumption of redemption is of a higher nature than that arising from a deed issued by the State Land Commissioner under Kirby's Digest, § § 4802-3. The presumption is that public officers do their duty as the law requires. In an action of ejectment where plaintiff and defendant both base their claims upon presumptions of equal dignity the defendant must prevail, the burden being on plaintiff to show title and better right to possession. 205 S. W. 699.

3. The deeds of appellant and her grantors were all of record and notice to Stover at the time of his purchase. 86 Ark. 202; 69 *Id.* 442. Appellant owned the timber, and 205 S. W. 699 is conclusive. However, if the timber belonged to appellee there is no slander of title shown, for appellant's claim, and statements were not shown to be false and malicious or willful. 25 Cyc. 248; 90 Cal. 532; 13 L. R. A., and cases cited in foot notes.

*Woodson Moseley* and *S. J. Hunt,* for appellee.

1. The overdue tax deed to Kilpatrick is *prima facie* title. 76 Ark. 450.

2. The officers who placed the land on the tax books while State land had no authority to do so, and the State is not estopped to assert title. 93 Ark. 490. The case in 135 Ark. 353 is quite different from this, and the proof offered here. No presumption of a grant or redemption arises from possession and continuous payment of taxes for a period less than 20 years. 86 Ark. 202 and 69 *Id.* 442 do not apply here, as in those cases the parties deraigned title from a common source. Appellee who purchased from Stover is not estopped by the deed from Bearden to Stover December 2, 1911, because Stover had already acquired paramount title, having purchased from Kilpatrick. 16 Ann. Cases 648-654. One of two grantees of a common grantor may assert against the other a title different from or paramount to that derived from the common grantor. 16 Ann. Cases 648-652.

The proof of special damage and the amount is positive, and appellee is entitled to the amount claimed. 56 Wash. 162; 21 Ann. Cases 220. Besides appellant actually sold and removed the timber after the commencement of this action.

HART, J., (after stating the facts). The plaintiff's title was derived from the sale of the lands for taxes by virtue of a decree of the chancery court under the overdue tax law. The land was sold to the State in 1883, and no redemption was had within the time prescribed by the statute. The commissioner executed a deed to William Kilpatrick to the land on the 14th day of March, 1907. Kilpatrick conveyed the land to G. W. Stover on October 17, 1911, and Stover in turn conveyed it to the plaintiff. Under these conveyances the plaintiff acquired a valid title to the land. *McCarter* v. *Neil,* 50 Ark. 188; *Fiddyment* v. *Bateman,* 97 Ark. 76, and *Wagner* v. *Arnold,* 91 Ark. 95.

Counsel for the defendant recognized the force and effect of these and other decisions of the court, holding that where the proceedings were regularly had under the overdue tax act of March 12, 1881, resulting in a sale of the land for taxes under the orders of the court, which was confirmed, all persons interested in such land are thereafter precluded from attacking such sale on account of defenses which could have been set up in such proceedings. But they claim that the facts in the present case make an exception to the general rule and bring it within the principles decided in *Wallace* v. *Hill,* 135 Ark. 353. We do not agree with counsel in this contention. The facts here are essentially different from those presented by the record in that case. There, the owner of the lands occupied them at the date of the overdue tax sale. The owner presented the tax receipt of the proper officer showing that he had paid the taxes on the land for the year mentioned in the decree under the overdue tax law, and the court held that the owner was precluded in this respect by the decree in the overdue tax pro-

ceedings. The landowner further showed, however, that the taxes were placed on the tax books for the next year and each succeeding year thereafter, and that the taxes were regularly assessed in his name. He exhibited tax receipts showing that he had paid the taxes for all these years. There was a finding of the chancellor in his favor, and the court held that under the circumstances the chancellor was warranted in finding that the owner had redeemed the land from the overdue tax sale, as he had a right to do under the statute. Here the lands were sold to the State in an overdue tax proceeding in 1883. The record does not show that any of the grantors of the defendant owned the land at this time. Nor does it show that either of them owned the land or paid the taxes thereon in 1884. It does show that one of the plaintiff's grantors paid the taxes on the land for the year 1885. This, however, does not establish the fact that such person owned the lands in 1883, at the time they were sold and, consequently, had a right to redeem from the overdue tax sale.

It is true the record does show that the tax books for the years 1882, 1883 and 1884 were burned, but this fact did not prevent the defendant from showing that its grantors owned the land at the date of the sale under the overdue tax proceedings, and therefore had a right to redeem the land from such sale.

In the present case the claim of the plaintiff is made under a paramount title derived by *mesne* conveyances directly from the State, and the court was right in holding that he had a valid title to the land and the timber thereon. In the decree not only was the title of the plaintiff quieted, but it was adjudged that she have and recover from the defendant the sum of one hundred dollars damages. It is, also, claimed that the decree should be reversed because the court awarded damages to the plaintiff. We do not think this position is sound. Plaintiff alleged that a few weeks before the filing of the complaint she was negotiating with E. R. Buster and Clarence E. Griffin for the sale of timber on said land

and that defendant through its agents forbade her from selling or cutting the timber and prevented her from selling said timber. That, by reason of the unlawful acts of defendant in claiming said timber and posting the same, she has been damaged in the sum of one hundred dollars. The proof shows that she and her husband lived on the land; that part of it had valuable growing timber on it.

The plaintiff, through her husband as her agent, sold a part of the timber to a corporation, of which E. R. Buster and Clarence E. Griffin were the principal stockholders, and controlled the corporation. Subsequently her husband for her made a sale to Griffin of the rest of the timber on the land, and he agreed to advance $135 for the purpose of paying a mortgage for the purchase money. The defendant then tacked upon the trees on the land large posters, some twelve by fourteen inches in size, as follows: "Posted property, owned by Chicago Land and Timber Co., Clio. Any person trespassing will be prosecuted." After seeing this notice, Griffin refused to take the timber as he had agreed to do.

According to the testimony of C. E. Griffin, he offered to purchase the timber on the land for $5 per thousand delivered at his mill or pay $2 per thousand and haul it himself. He agreed to pay the amount of the mortgage indebtedness on the land, which amounted to $123.70. He thought the timber would pay $100, and agreed that the husband of plaintiff might work out the balance. After he saw the notices posted on the land, by the defendant, he refused to consummate the sale of the timber because he was afraid of getting into a lawsuit with the defendant. The contract had not yet been reduced to writing. The highest obtainable price for the land thereafter was $100, less than its market value. This testimony was not attempted to be contradicted. We think the allegations and proof sustained the finding of the chancellor as to the damages. The growing trees constituted a part of the realty, and their conveyance by the plaintiff to Griffin was a conveyance of an interest

in the land itself. *Graysonia-Nashville Lbr. Co.* v. *Saline Development Co.*, 118 Ark. 192, and cases cited.

It is true that the contract to sell the timber was a verbal one, but it was intended that it should be reduced to writing, and Griffin says that he would have carried out the contract if the defendant had not claimed the timber and have forbidden anyone from cutting and removing it. The notice went further and threatened the prosecution of anyone cutting the timber. The loss of the sale of the timber is alleged and relied upon as special damages. The complaint alleges a loss of a sale to E. R. Buster and Clarence E. Griffin. The proof shows that they were the principal stockholders of a corporation which had agreed to purchase the timber for $100, the amount of damages awarded by the chancellor. The complaint set out the name of the persons to whom the timber was sold, and the damage suffered from a loss of the sale. The defendant was put upon notice of what it was to meet. The special damages alleged was the natural and proximate cause of the posted notice set out above. The complaint alleged precisely in what way special damages would result from the posted notice. In the notice the defendant not only claimed the title but threatened to prosecute anyone interfering with it. The plaintiff was in the possession of the land and as shown in the opinion, according to the current of authority for many years, the defendant had no title to the land. The decisions on the conclusiveness of overdue tax sales have already been cited. The controlling principles of law above announced are supported by the following cases: *Stevenson* v. *Love,* 106 Fed. 466; *Wilson* v. *Dubois* (Minn.), 59 Am. Rep. 335; *Harris* v. *Sneeden* (N. C.), 7 S. E. 801; *Hopkins* v. *Drowne* (R. I.), 41 Atl. 567; *Eberle* v. *Fields* (Ala.), 62 So. 73; *Hubbard* v. *Scott* (Ore.), 166 Pac. 33, and *McGuinness* v. *Hargiss* (Wash.), 21 Ann. Cases 220.

From the views we have expressed, it follows that the decree must be affirmed.