Townsend *v.* Bonner.

4-6937                                    169 S. W. 2d 125

(Substitute for opinion delivered February 1, 1943)

*Young & Macom* and *John L. Ingram,* for appellant.
*P. D. Moncrief* and *W. A. Leach,* for appellee.

SMITH, J. The material facts in this case are covered by the stipulations of counsel. These cover and relate to some matters not raised in the pleadings, but the pleadings will be treated as amended to conform to the stipulations.

From these stipulations the following facts appear. Ira P. Goff acquired title from the State to the 40-acre tract of land, here in litigation, in 1857. The land forfeited and was certified to the State for the nonpayment of the taxes for the year 1868. Based upon this forfeiture, a donation certificate was issued to J. W. Williams in 1875, and in 1878 a donation deed was issued to Williams.

The land was sold to the State at a tax sale held June 12, 1877, for the nonpayment of the taxes assessed against it for the year 1876, and, not having been redeemed within the time permitted by law, was certified to the State as "tax forfeited lands" subject to disposal by the State under the then existing law.

At a collector's sale for the taxes of 1890, the land was sold to J. H. Hutchinson, whose administrator received a tax deed based upon this sale. On January 3,

174

1897, the sale was confirmed under the provisions of Chapter XXV, Sandels & Hill's Digest, (now §§ 10975-10989, Pope's Digest), upon the petition of his heirs. By mesne conveyances the plaintiffs in this case acquired this title.

On February 12, 1940, the State Land Commissioner executed and delivered to W. H. Bonner a deed based upon the sale for the taxes of 1876.

It was further stipulated that the land here in controversy at all times herein mentioned was uninclosed and unimproved, and that the plaintiffs who succeeded to the Hutchinson title, and those under whom they claim title, have continuously paid all taxes that have been assessed and levied against said land since 1895, under color of title and claim of ownership, and that more than fifteen whole years have elapsed since the first payment and the last payment.

Under this stipulation, color of title in plaintiffs is presumed under the provisions of § 8921 of Pope's Digest, and the land is deemed and held to be in the possession of plaintiffs through the payment of taxes, under their color of title derived from Hutchinson's heirs and grantees, for the period of more than seven consecutive years under the provisions of § 8920 of Pope's Digest.

Upon this record the successors to the Hutchinson title brought this suit to cancel the deed of the Land Commissioner to Bonner. The court below denied the relief prayed, that is, the cancellation of the deed from Page, Commissioner, to Bonner, and dismissed the suit as being without equity, and from that decree is this appeal.

The right of the plaintiffs to attack this deed to Bonner is very clear, and is not disputed, and, in our opinion, the relief prayed should have been granted.

It will be remembered that appellee's deed from the Commissioner of State Lands is based on a tax sale to the State for the taxes of 1876, now about 66 years ago.

Since that sale, the land was sold to Hutchinson for the taxes of 1890, and, on January 3, 1897, this sale was confirmed under the law then in force, and Hutchinson's

successors in title have paid, or discharged, the taxes assessed against the land from 1891 to 1941, a period of 50 years.

Now, it may be conceded that if the State had title to this land at the time of the confirmation decree above referred to, the State's title was not divested by that decree. But this decree involves the finding that the land was regularly assessed for the taxes for which it was sold, and the confirmation decree cured any infirmity in the sale.

How did the land get back on the tax books? This could only have been done through the action of the officials charged with the duty of assessing land for taxation. Appellee insists that these officials were without authority to assess the land for the taxes of 1890, or any year subsequent to 1877, for the reason that the title to the land was in the State and that it was, therefore, not subject to taxation.

The argument in support of this contention is that under Act CXXIV of the Acts of 1873, the Act, pursuant to which the sale for the 1876 taxes was had, provided for a redemption during the period of two years only following the sale, and no redemption within that time was shown, nor does it appear that any taxes were assessed or paid on the land within that period. For these reasons it is insisted that the holding in the cases of *Wallace* v. *Hill*, 135 Ark. 353, 205 S. W. 699, and other cases applying the principles there announced, cannot be applied here.

In the case just cited, Wallace alleged title in himself under a deed made to him by the Commissioner of State Lands based upon a sale to the State under an overdue tax decree rendered in 1882. Hill and the other defendants resisted Wallace's prayer for possession. They deraigned title from the United States Government and alleged possession in themselves and those under whom they claimed for more than 30 years. No redemption from the sale under the overdue tax decree was shown, but it was there held, to quote the fourth headnote, that: "Where lands were sold to the State under the overdue tax sale, and for thirty-four years thereafter the State,

through its county officers, assessed, levied and collected the taxes on such lands in the names of the original owners and their successors, it will be presumed that such lands had been redeemed from the Commissioner of State Lands by the original owners.''

The reasons inducing that conclusion are applicable to the facts of this case, and we, therefore, quote somewhat extensively from that opinion, in which it was said: ''While there is no proof in the record that the lands had been redeemed, yet under the above undisputed facts it will be presumed that the lands had been redeemed. After a lapse of thirty-four years during all of which time the State each year through its officers had assessed, levied and collected the taxes in the names of the owners listed upon the tax books, the State will not be heard to say that the acts of her officers were unauthorized and that the lands had not been redeemed as authorized by the overdue tax act. As is said in *Martin* v. *Barbour*, 140 U. S. 634, 11 S. Ct. 944, 35 L. Ed. 546, 'No more manifest case for the interposition of a court of equity can be imagined. The State is bound by the acts of her officers in placing the lot on the tax books for the years 1885 and 1886, and receiving from the appellees the taxes for those years. Equity will treat the transaction as a waiver of the prior supposed forfeiture, and will regard the tax paid for 1885 and 1886 as so much paid toward redemption, and will permit the payment of the rest. The appellant took his deed for the land in the same condition in which the State held it, and subject to the same equities and defenses. The State, having created its bureau of taxes, is bound to see to it that its officers impart correct information to parties dealing with it and do not mislead them.'

''The presumption that the lands were redeemed from the State and that the Land Commissioner had issued a certificate to the owners showing redemption under the statute is supported in principle by the doctrine announced by this court in the recent case of *Carter* v. *Goodson*, 114 Ark. 62, 169 S. W. 806, where we held: 'The presumption of a grant from long continued possession is one of fact, and it is for the jury or court trying

the case to determine the effect of the evidence in support of the presumption.'

"After a period of thirty-four years of continuous possession and a payment of taxes, during all of which time the State received her portion, in the absence of affirmative proof that the lands had not been redeemed, the State should not be permitted to repudiate these acts of her officers. To do so would enable her to take advantage of her own wrong." The following cases are to the same effect: *Lloyd* v. *Thornton,* 147 Ark. 247, 227 S. W. 396; *Wilson* v. *Chisholm,* 157 Ark. 418, 248 S. W. 273; *Joiner* v. *Sorrels,* 178 Ark. 821, 12 S. W. 2d 397.

It is urged by appellee that these cases are not applicable here, and that the rule announced in *Chicago Land & Timber Co.* v. *Dorris,* 139 Ark. 333, 213 S. W. 759, should be applied. The distinction made is that in the last cited case it was not shown, as it had been in the others, that taxes had been paid on the land within the period of redemption and that there can, therefore, be no presumption that the land had been redeemed.

It is true that under Act CXXIV of the Acts of 1873, the law in force when the sale for 1876 taxes occurred, the period of redemption was two years, and that after the expiration of that time the forfeited land was certified to the State when no redemption had been made. But this limitation was not applicable in all cases. By § 115 of this Act it was provided that lands sold and certified to the State belonging to "*femes coverte,* insane persons, minors, or persons in confinement," might be redeemed at any time within two years from and after the expiration of such disability.

It is true the record here does not show that any person under any of these disabilities redeemed the land, but such right of redemption existed, and we know that the lands were placed back upon the tax books, and that action was authorized in the event only that the lands had been redeemed, or had been purchased from the State.

The case of *Wallace* v. *Hill, supra,* distinguishes the case of *Board of Dir. St. Francis Lev. Dist.* v. *Fleming,*

93 Ark. 490, 125 S. W. 132, where it was held that no redemption could be presumed, but this for the reason that under the special Act under which the lands had been sold, in that case for the nonpayment of levee taxes, no right of redemption existed. Here, the right of redemption existed for the period of two years, and might be exercised by any person under any of the disabilities named within two years after the removal of the disability.

The learned counsel for appellee in the instant case was counsel for appellants in the case of *Lloyd* v. *Thornton, supra,* and the contention was made there, as it is here, that the records of the State Land Office did not show that a redemption had been effected. In overruling that contention Justice HART said: "It is contended that the present case is differentiated from that of *Wallace* v. *Hill, supra,* because the record herein recites that the records of the State Land Office do not show that the lands involved in this suit were redeemed from the overdue tax sale. This is a negative showing which we do not regard as of any force whatever. Of course, if the record at the Land Office affirmatively showed that the lands had been redeemed, that would end the matter. No such showing appears on the records, and it is because of the absence of such showing that the presumption can arise at all. The presumption is in favor of the landowner, whom the record shows had performed his full duty to the State with regard to the payment of taxes assessed against his lands. If, in fact, the owner exercised his right of redemption in apt time, it would be inequitable to deprive him of his title simply because the Commissioner of State Lands failed to discharge his duty and to make his records show that the lands had been redeemed. It is in accord with the principles of equity to hold that the action of the officers of the State in placing the land on the tax books in the name of the owner during the time he had a right to redeem, and the assessments and collection of taxes from him thereafter for a long period of years, is sufficient to raise a presumption that he did redeem from the overdue tax sale."

Appellee relies upon the case of *Chicago Land & Timber Company* v. *Dorris, supra,* but in that case it does not appear to have been questioned that the land was not redeemed within the time allowed by law for that purpose; the opinion states the fact to be that it was not. No such concession is made here, the insistence being that there was a redemption, which, if not affirmatively shown, will be presumed, and, in view of the holdings of this court in the cases above cited, we think that presumption should be indulged.

It follows, from what has been said, that the decree of the court below must be reversed, and the cause is remanded with directions to cancel Bonner's deed as prayed.