KOONCE v. WOODS.

4-8119.                                   201 S. W. 2d 748

Opinion delivered April 7, 1947.
Rehearing denied May 26, 1947.

*W. A. Leach,* for appellant.

*John B. Moore* and *Mann & McCulloch,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal involves title to 14.42 acres in the northwest quarter of section twenty-seven, 1-N, 3-W, Monroe County. An agreed statement is that in 1920 and prior thereto the fractional east half of the west half of the section was assessed for general taxation. This tract forfeited for non-payment of 1923 taxes, but the record shows that an assessment was extended in 1927 against "Pt. E½ W½ Sec. 27, Twp. 1-N, R. 3-W, 14.42 acres." It was further agreed that for 1927 and subsequent years taxes were paid on this tract "in the manner provided by law." These payments were by Woods Lumber Company and its predecessor, White River Lumber Company.

February 13, 1933, White River Lumber Company delivered to Eugene Woods its warranty deed conveying ". . . a part of the north part of fractional northwest quarter of section twenty-seven, . . . commencing at an iron post on the east bank of the White River, which marks the southwest corner of Private Survey No. 2309 and the northwest corner of fractional section twenty-seven; thence north 88 degrees east 910 feet; thence south nine degrees west 916 feet; thence north 81 degrees west 980 feet to the east bank of White River; thence in a northerly direction following the meanderings of bank to the point of beginning, which point of beginning is north 15¾ degrees east, 735 feet from the last mentioned point, containing 14.42 acres, more or less."

This deed was recorded April 5, 1933. It was agreed that a portion of the land described had been and is being used by Eugene Woods as part of the yard of Woods Lumber Company. April 6, 1931, the State's title to "Frl. E½, W½ Sec. 27, Twp. 1-N, R. 3-W, 198.47 acres" was confirmed under Act 296 of 1929, by reason of forfeiture for 1923. July 24, 1940, the State Land Commissioner delivered to H. F. Koonce what was designated a correction deed, conveying "Fractional NE¼ NW¼ Sec. 27, T. 1-N, R. 3-W, containing 34.53 acres."

Some time before September 26, 1944, Koonce undertook to enclose the property he had purchased from the State, and in so doing encroached upon Woods' land. Woods procured a restraining order. On final hearing the decree was that the deed of July 24, 1940, was void "insofar as it affects the title of [Woods] to the land [described by metes and bound"]. The injunction was made permanent, and this appeal followed.

Section twenty-seven, township one north, range three west, is irregularly formed. The government plat and field notes show that the survey of the east side was made in 1856 and that it started at the southeast corner and ran north a distance of 74.76 chains. But the southeast quarter contains 160 acres, hence the deficiency of 5.24 chains must relate to the northeast quarter, with a measurement of 34.76 chains on the east. A reference to the insert map discloses that this east line intersects the south boundary of Spanish grant No. 2309 at a point twelve links S. 88 degrees west of the southeast corner of the grant, surveyed by N. Rightor in 1817 and subsequently approved as the property of Joseph Mitchell, who claimed in right of Alexander Bridoute.

That portion of section twenty-seven lying West of White River was surveyed by H. B. Allis in 1842 and resurveyed by P. B. Starbuck in 1854-55, beginning at the southeast corner of section twenty-eight, thence north. The north line of the northwest quarter of section twenty-seven lying west of the river is 16.63 chains, but this line is not parallel with the south line of the Spanish grant. The north line of the northeast quarter, and the north

line of that part of the northwest quarter of section twenty-seven lying east of the river, are the south line of the grant, and the distance from intersection of the east line of the northeast quarter with the grant, to its terminus on the river, is 56.63 chains. If this line should be projected across the river it would be approximately seven chains south of where the north line of that part

of the northwest quarter west of the river touches the stream.

Appellee argues that the decree should be affirmed (a) because description in the deed under which Koonce holds is indefinite, requiring judicial construction, and (b) that some one with a redeemable interest in the forfeited land had effectuated redemption prior to 1927, an assessment having been extended against the 14.42 acres that year. Appellant contends that the presumption of redemption was not sustained by showing the assessment and payment of taxes on "Pt. NW¼ Sec. 27, T. 1-N, R. 3-W."

*First* — (a) — The description "Fractional NE¼ NW¼ Sec. 27, T. 1-N, R. 3-W, containing 34.55 acres," is valid under many decisions of this Court. Mr. Justice McCulloch, in the opinion on rehearing in *Little v. Williams,* 88 Ark. 37, 113 S. W. 340, said that Courts take cognizance judicially of the general system of government surveys, and that terminology employed in relation to them is necessarily a reference to the plats of official surveys; otherwise the terms would be meaningless. See *Chestnut* v. *Harris,* 64 Ark. 580, 43 S. W. 977, 62 Am. St. Rep. 213; *Crill* v. *Hudson,* 71 Ark. 390, 74 S. W. 299; *Rucker v. Arkansas Land & Timber Co.,* 128 Ark. 180, 194 S. W. 21; *Turner* v. *Rice,* 178 Ark. 300, 10 S. W. 2d 885; *Alphin* v. *Banks,* 193 Ark. 563; 102 S. W. 2d 558; *State* v. *Guthrie,* 203 Ark. 60, 156 S. W. 2d 210. Other cases are to the same effect. The fact that the land embraced within the description is less than forty acres is of no importance. It follows that, *prima facie,* Koonce took all of the area within the fractional description.

*Second*—(b)—At the time Koonce procured his correction deed, Woods owned the land described by metes and bounds, and it was definitely within the description set out in the Koonce deed, for the point of beginning is "an iron pipe on the east bank of the White River, which marks the southwest corner of Private Survey No. 2309."

Was Koonce charged with notice of what Woods claimed, occupied, and upon which he had been paying taxes for seventeen years?

Appellant, as the State's grantee, has no better position than the grantor. When he procured his deed he obtained only what the State owned. The confirmation decree of 1931 did not vest title if the State's right to sell for taxes were lacking. In *Stringer* v. *Conway Bridge District*, 188 Ark. 481, 65 S. W. 2d 1071, Mr. Justice MEHAFFY said: "If taxes on a tract of land had already been paid, the sale would be void," and confirmation would likewise be void. This holding was cited in *Kirk* v. *Ellis*, 192 Ark. 587, 93 S. W. 2d 139.

Does the agreed statement in this case call for application of the rule announced in *Townsend* v. *Bonner*, 205 Ark. 172, 169 S. W. 2d 125? The opinion discusses *Wallace* v. *Hill*, 135 Ark. 353, 205 S. W. 699, where it was held that, after a lapse of thirty-four years during which time the State, through its officers, had assessed, levied, and collected taxes in the names of the listed owners, ". . . it will not be heard to say that the acts of [such] officers were unauthorized, and that the lands had not been redeemed as authorized by the overdue tax act." In the Townsend-Bonner case it is said that the property could only have gotten on the tax books through action of officers charged with that duty.

The principle with which we are concerned was emphasized by Judge MARTINEAU in *State of Arkansas* v. *Rust Land & Lumber Co.*, 51 Fed. 2d 555. He mentioned *State of Iowa* v. *Carr*, 191 Fed. 257, where Judge WALTER H. SANBORN said: "In a controversy between the rights of a State and those of a citizen, while the State is not barred by mere delay, its rights are measured and adjudicated by the doctrine of estoppel, and the other principles and rules of law and equity applicable to the like rights of a citizen under similar circumstances. . . . The plaintiffs and their grantors had been in possession of the land in controversy for more than twenty years. *During this time the State levied and collected taxes upon this land as theirs and had acquiesced in their posses-*

*sion,* and the plaintiffs had paid taxes and made costly improvements upon the land. There was no equity in the claim of the State, and it was estopped from maintaining this claim by these facts." There was this quotation from Lord Camden in *Smith* v. *Clay,* 3 Brown, Ch. 639: "Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence."

In *Carter* v. *Goodson,* 114 Ark. 62, 169 S. W. 806, the subject matter was land sold by the State to Carter. It was held that a prior grant would be presumed. The following language from an opinion by Mr. Justice SHIRAS in *United States* v. *Chaves,* 159 U. S. 452, 16 S. Ct. 57, 40 L. Ed. 215, was quoted with approval: ". . . By the weight of authority, as well as the preponderance of opinion, it is a general rule of American law that a grant will be presumed upon proof of adverse, exclusive, and uninterrupted possession for twenty years, and that such rule will be applied as a *presumptio juris et de jure* wherever, by possibility, a right may be acquired in any manner known to the law."

In *Carter* v. *Stewart,* 149 Ark. 189, 231 S. W. 887, 232 S. W. 936, Carter claimed under a patent dated in 1917. In writing the opinion Mr. Justice HART said: "Under its sovereign power, a State imposes a burden upon all its citizens to pay taxes on the property owned by them for the purpose of supporting the government. It is the duty of the officers of the State to place the land in the State on the tax books for that purpose as soon as the State has parted with its title to them. Hence when the State has for a long time demanded and collected taxes on property and the property-owner has acquiesced therein by paying taxes, there arises a presumption that there was a legal liability to pay the taxes, and this furnishes a strong circumstance from which the court may infer a grant from the State. Of course, from the very nature of the thing, the person paying the taxes must be in the uninterrupted and continued possession of the land in order to warrant the court in finding a grant from the State. In such cases the possession of the adverse claimants could have had a legal inception, and the doctrine of presumption of a

grant from the State under such circumstances is recognized in many cases.''

With no facts other than the agreed statement that for 1927 and succeeding years taxes were paid by Woods ''in the manner provided by law,'' it must be presumed that there had been a redemption from the 1923 forfeiture. It is just as reasonable to say that records upon which the Land Office predicated its right to sell were erroneous as it is to say that Monroe County taxing officers improperly assessed the tract containing 14.42 acres; nor is the result necessarily based upon estoppel. When one presumption is balanced against another, there is no logic in the contention that Woods' rights are inferior, and that Koonce must prevail because the acreage in controversy fell within the area described in the correction deed.

In applying to the case at bar the principles announced in the Townsend case we are not disregarding the difference between possession and tax payments for 30 years, 66 years, 34 years, and 17 years. The period of time goes to the matter of good faith of a two-fold character: faithful conduct by the State's officers on the one hand, and good faith upon the part of the taxpayer. The difference in time can have no effect on the legal principle.

We do not have a statute establishing a period directly applicable to the facts here; but by analogy certain legislative acts should be considered. *Schmeltzer* v. *Scheid,* 203 Ark. 274, 157 S. W. 2d 193, emphasizes the State's policy of protecting rights of one who in good faith pays taxes on real property. By Act 66 of 1899, Pope's Digest, § 8920, payment of taxes on unimproved and unenclosed land under color of title for a period of seven consecutive years constitutes an investiture of title. *Townsend* v. *Denson,* 74 Ark. 302, 86 S. W. 661, and other cases cited in *Schmeltzer* v. *Scheid.* By subsequent legislation (Act 199 of 1929, Pope's Digest, § 8921) one who pays taxes on wild and unimproved land for a period of fifteen years has color of title as a presumption of law. These statutes, of course, are not limitation

measures. They establish, in the one case, an investiture of title, and in the other there attaches color of title as a legal presumption.

A presumption of law, or a fact, or a condition, is just as binding on the State as on individuals; and the State, by acceptance of a taxpayer's money, as in the instant case, should be bound in a court of equity by analogous conditions which the lawmakers saw proper to declare as public policy. By this we do not mean that the State can be estopped by acts of its officials they were not authorized to consummate. On the contrary, the same principle heretofore promulgated is given effect, and it is this: After a long lapse of time a grant or conveyance by the State or its officials will be presumed—not as a matter of fact, but one of law.

The result cannot affect redemption rights of those under disability, conferred by Pope's Digest, §§ 8666 and 13860. The right is not an estate in the land, but a statutory privilege contrived to defeat the tax title. Pope's Digest, § 13860; *Harris* v. *Harris,* 195 Ark. 184, 112 S. W. 2d 40.

The right to redeem runs with the land, and any person who would otherwise acquire title takes with notice. *Schuman* v. *Westbrook,* 207 Ark. 495, 181 S. W. 2d 470. No action of the State or its officials can destroy the statutory right of minors, or others under disability, to redeem. This right is not affected by a deed executed by the Land Commission.

The decree permanently restraining appellant from interfering with appellee's possession is affirmed.

Mr. Justice MILLWEE not participating.

[See *Deniston* v. *Langsford, infra* p. 780, where comment on this case is made.]