DENISTON *v.* LANGSFORD.

4-8199                                           202 S. W. 2d 760

Opinion delivered June 2, 1947.

*A. D. Chavis,* for appellant.

*Max M. Smith,* for appellee.

GRIFFIN SMITH, Chief Justice. Deniston sought to eject Garland and Lillie Mae Langsford from Lots Five and Six, Block Nineteen, Niven's Addition to the City of Rison. The defendants' motion to transfer to equity was overruled and exceptions were saved.

Deniston's claim of ownership rests upon the State's deed executed by the Land Commissioner May 16, 1945.

It is conceded that title was in Lula Culpepper who permitted the property to forfeit for the 1931 taxes. At the Collector's sale in 1932 the lots were struck off to the State, with certification in 1934. They were included in a confirmation decree rendered October 11, 1943, under authority of Act 119 of 1935.

It is stipulated that Lula Culpepper, notwithstanding the forfeiture for 1931 delinquencies, paid taxes for 1932 and her husband paid for 1933. Taxes for 1934 were not paid. George Holmes purchased at the Collector's sale, in 1935, but the Bank of Rison as mortgagee redeemed and thereafter paid taxes through 1939. A third forfeiture occurred when taxes for 1940 were not paid. B. W. Thomasson became the purchaser and paid assessments for 1941, 1942, and 1943. The Langsfords procured a special warranty deed from Thomasson January 22, 1944. The County Clerk's deed to Thomasson evidencing his purchase for the 1940 delinquencies is dated December 31, 1943. The Bank of Rison quitclaimed to Thomasson July 3, 1945, after its mortgage had been foreclosed. Taxes for 1944 and 1945 were paid by appellees.

Circuit Court, after overruling the motion of appellees to transfer to equity, found from the documents introduced, the stipulation of counsel, and the testimony of the County Clerk, that action of County taxing officials in reassessing the lots for 1932 and in collecting taxes and permitting redemptions from subsequent forfeitures created a legal presumption that Lula Culpepper redeemed after failing to pay the 1931 taxes, hence the State was without power to confirm in October 1943, and the Clerk's certificate to the Land Commissioner in 1934 was without effect as to the lots in question. Judgment in the ejectment suit from which this appeal comes was rendered in August, 1946. The decision in *Koonce* v. *Woods, ante,* p. 440, 201 S. W. 2d 748, was rendered April 7, 1947. It deals with presumptions arising from assessment of real property and payment of taxes for a protracted period of time after forfeiture—in that case seventeen years—and the legal effect of such payments.

Appellees think the instant appeal is controlled by certain expressions in the Koonce-Woods opinion. In commenting upon *Wallace* v. *Hill,* 135 Ark. 353, 205 S. W. 699, and *Townsend* v. *Bonner,* 205 Ark. 172, 169 S. W. 2d 125, and in comparing the period there involved with the period of payment in the controversy then before us, it was said: ''The period of time goes to the matter of good faith of a twofold character: faithful conduct by the State's officers on the one hand, and good faith upon the part of the taxpayer. The difference in time can have no effect on the legal principle.'' A petition for rehearing in the Koonce-Woods case was considered, and overruled May 26th. The opinion as a whole, we think, clearly reflects what the Court had in mind—that the presumption under discussion would never attach unless tax payments of the character in question had been made for a full fifteen-year period.

It does not imperatively follow that because appellees cannot invoke the presumption of redemption, reinstatement of assessments, and subsequent tax payments, that they are without a possible remedy. The delinquency for 1931 came when depressed financial conditions had resulted in forfeitures generally throughout the State. This status was dealt with by the Forty-Ninth General Assembly. Act No. 2 of the First Extraordinary Session was approved August 18, 1933. Sec. 2 of Act 2 permitted redemption at any time prior to January 1, 1934, by the payment of taxes due at the time the same became delinquent plus all cost of the sale, but without penalty or interest. Act No. 2 of the Second Extraordinary Session was approved January 8, 1934. Sec. 2 contains the same language found in § 2 of Act 2 of the First Extraordinary Session, but by § 1 the period of redemption is extended to April 10, 1934. Act 2 of the Third Extraordinary Session, approved April 12, 1934, contains provisions similar to those of the First and Second Extraordinary Sessions, but permits redemption at any time before October 1, 1934. Act 16 of the First Extraordinary Session deals (among other things) with installment payment of taxes. See also Acts 170 and 282 of 1935.

Since it is stipulated that Lula Culpepper or her husband paid taxes on the lots in 1933 for the assessment of 1932, and in 1934 for the assessment of 1933, the question is, Did either of these payments have the effect of redeeming from the 1931 forfeiture under either of the emergency Acts?

Redemption under these laws must have been effectuated (if locally) through the County Clerk as distinguished from regular payment to the Collector; but there might be circumstances under which payment to the Collector on direction of the Clerk would in equity be equivalent to payment to the Clerk. Whether the purpose in making payment in 1933 and 1934 was to redeem in the special manner provided is not shown by any testimony; nor does the case appear to have been tried on that theory. In the motion to transfer to equity it was said (and the allegation was not denied) that the confirmation suit remained on the Court's docket "and passed several terms without an order of continuance. It was removed from the docket and replaced [presumptively] at the time the decree of confirmation was rendered." It is urged that the landowner was misled and therefore failed to intervene. While these were matters within the Court's discretion in the absence of substantial evidence of injury, we think that in view of all the facts that have been shown in the action against appellees the case should have been transferred to equity where it could have been fully developed. Reversed and remanded with directions to certify such transfer.