## DACUS LUMBER COMPANY, A Delaware Corporation *v.* David DICKEY and Garvin BUTLER

5-5868                                   479 S.W. 2d 849

*Opinion delivered May 8, 1972*

*Daggett & Daggett,* for appellant.

*Skillman & Furrow,* for appellees.

CARLETON HARRIS, Chief Justice. Appellant, Dacus Lumber Company, instituted suit in the Crittenden County Circuit Court against David Dickey and Garvin Bulter, appellees herein, in which it was alleged that appellees had illegally cut and removed timber from certain lands (a tract described by metes and bounds and said to contain 21.88 acres) in Crittenden County, belonging to appellant. Appellees denied that the cutting was illegal, asserting that the timber was cut from two tracts of land belonging to Butler. A cross-complaint was filed alleging that appellant was wrongfully in possession of these lands belonging to appellees, and had wrongfully cut and removed timber which belonged to Butler. Upon motion of appellant, the case was transferred to the chancery court, and after preliminary matters had been disposed of, proceeded to trial, at which time testimony was presented by both parties. It developed that the controversy really only centers on a particular 5 acres, described as West 1/2, North 1/2, Lot 5, Spanish Grant No. 2289 (and this is all that is at issue on this appeal), and the court found that title to the particular 5 acres

should be quieted in Butler as against Dacus Lumber Company. The court denied damages to either party. From the decree so entered, appellant brings this appeal.

It might be mentioned that the court, in its opinion deciding the case, found that "Neither of the parties has a good merchantable title, but as between the two, the defendants have the better and I am so holding".

The stipulation as to the Butler title to this tract reveals:

I. Title to W 1/2 of Lot 5 vested in M. B. Winchester by virtue of a quitclaim deed (July 30, 1890) and a warranty deed (February 12, 1891).

II. W 1/2 N 1/2 of Lot 5 was sold to the State for the nonpayment of the 1902 taxes in Winchester's name.

III. W 1/2 N 1/2 of Lot 5 was forfeited to the State in 1905.

IV. W 1/2 N 1/2 of Lot 5 was deeded on October 25, 1940, to Joe Somerville by the State Land Commissioner, reciting that the lands had forfeited to the State for the nonpayment of the 1902 taxes.

V. W 1/2 N 1/2 of Lot 5 was ultimately conveyed, through subsequent mesne conveyances, to appellee Butler by quitclaim deed (May 12, 1967).

The deraignment of title filed by appellant reveals that:

I. L. W. Lang conveyed to Frank McArthur by quitclaim deed (December 1943) 21.88 acres described

by metes and bounds and containing, among other lands, all of appellee Butler's five acres.

II. Subsequent mesne conveyances ultimately conveyed to appellant the 21.88 acres under the same description.

The confusion in this litigation is the result of there being two owners of record of the land in question. That circumstance was brought about by the issuance of two deeds by the State Land Commissioner, one to Lang in February 1938 for the "W 1/2 of Lot 2" of the Spanish Grant, based upon the 1928 nonpayment of taxes, and the other to Somerville in October 1940 for the "W 1/2 N 1/2 of Lot 5" of the Spanish Grant. At some unkown time, the confusion was compounded when the description of the land conveyed to the state in 1928 for the nonpayment of the taxes then due in the name of Ball and Peters was changed from the typed "W 1/2 of Lot 2" entry to the ink entry "N 1/2 Lot 5." There is no evidence of who made this change, nor when it was made. The state's conveyance in 1938 to Lang made reference only to the original 1928 description in describing the land conveyed (W 1/2 of Lot 2). However, when Lang conveyed to McArthur (one of appellant's predecessors), he gave a quitclaim deed to "Part of Lots 4 and 5" of the Winchester Partition of private survey No. 2289, Township 6 N Range 9E, the property then being described by metes and bounds. The description used is the same description that appellant used when instituting this suit. Thus, appellant really bases its title on the deed received by Lang from the state.

Let it be remembered however that there is no conveyance from anyone to Lang of anything except the "W 1/2 of Lot 2," and appellant would seem to be contending that the correction made on the collector's record, in ink, changing the "W 1/2 of Lot 2" to "N 1/2 Lot 5" really had the effect of conveying to the state the "N 1/2 of Lot 5," and that such recitation should have been contained in the state deed. We reiterate that there is nothing in the record which shows that the entry made in ink was made *before* the property was conveyed to the state by

the sheriff and collector, and it would really appear that it was not made until after the conveyance to the state for the reason that the state used the original description in conveying to Lang. As pointed out by appellees in their brief, appellant's deraignment commences only with this deed from Lang, and Lang never received by conveyance any title to any part of Lot 5 of Spanish Grant No. 2289. Also, as mentioned by appellees, if appellant had deraigned title in compliance with Ark. Stat. Ann. § 34-1408 (Repl. 1962), it could not have connected this land to anything except a description of Lot 2, not 5, of Spanish Grant No. 2289.

Appellant argues that no title can be based on the forfeiture to the state for the 1902 taxes for the reason that the state collected taxes on the land from 1904 until 1928,[1] and it is argued that where the state has for a long time demanded and collected taxes on property, and the property-owner has acquiesced therein by paying taxes, there arises a presumption that there was a legal liability to pay the taxes, and this furnishes a strong circumstance from which the court may infer a grant from the state. *Koonce* v. *Woods,* 211 Ark. 440, 201 S.W. 2d 748. It is thus argued that the state, having collected the taxes on this land, is presumed in law to have granted same to Winchester, and therefore had nothing to convey to Somerville in 1940. We see no need to discuss this contention for the reason already pointed out, *viz,* that in obtaining his deed from the state for the 1928 taxes, Lang simply received a deed to the W 1/2 of Lot 2.

Ralph Sloan, an attorney whose practice consists largely of title work, testified on behalf of appellees, and stated that, in his opinion, neither party had good merchantable title, but that he considered Butler's title better for the reason that Butler did receive a deed to the W 1/2 N 1/2 of Lot 5 while Lang's deed only referred to the W 1/2 of Lot 2. This was the view taken

---

[1] The taxes were delinquent in 1912 and unredeemed, were delinquent but redeemed in 1914. In both years the taxes were due in the name of Winchester. Taxes were delinquent and redeemed by Ball and Peters in 1915, and were again delinquent in 1928.

by the chancellor and we are unable to say that this finding was against the preponderance of the evidence.

Affirmed.

FOGLEMAN, J., not participating.