Leona BAKER, Administratrix of the Estate of Edgar
Baker, Deceased *v.* CERTAIN LANDS IN
INDEPENDENCE COUNTY, ARKANSAS, and
ARKANSAS GAME AND FISH COMMISSION

CA 85-495                                               720 S.W.2d 318

Court of Appeals of Arkansas
Division II
Opinion delivered November 26, 1986
[Rehearing denied December 23, 1986.]

*Highsmith, Gregg, Hart, Farris & Rutledge,* by: *Phillip Farris,* for appellant.

*Gary Vinson,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. Leona Baker, as administratrix of the estate of Edgar Baker, deceased, appeals from a decree of the Independence County Chancery Court quieting title to three tracts of land in the Arkansas Game and Fish Commission. We conclude that the chancellor erred in confirming title to two of the tracts and reverse that portion of the decree.

The facts pertinent to this appeal were stipulated. The lands in issue were described in the complaint as follows:

*Tract No. 1*: Southeast Quarter, Northeast Quarter of Section 29, Township 12 North, Range 7 West, 40 acres.

*Tract No. 2*: North One Half of the Northeast Quarter of Section 22, Township 12 North, Range 7 West, 88 acres.

*Tract No. 3*: Southeast Quarter of the Northeast Quarter of Section 27, Township 12 North, Range 7 West, 40 acres.

All three tracts were sold and certified to the state for nonpayment of taxes in the late 1930s and, on January 16, 1943, were transferred by the state to the Arkansas Game and Fish Commission pursuant to the provisions of § 17 of Act 378 of the General Assembly of 1939.[1] That section authorized the state land commissioner to transfer lands to the Game and Fish Commission for use as game and fish refuge areas, hunting and fishing areas, or other related purposes, on finding that the lands were not suitable for agricultural or industrial uses. It provided that such a transfer would be a bar to any grant by the state of the lands so transferred, "[p]rovided that any lands so acquired cannot be sold by the Game and Fish Commission, but same shall revert to the State if such lands are not developed within two years after acquisition, or at any time such lands are no longer desired by the Commission."

Although there was evidence that after 1960 the Game and Fish Commission stocked the area with game and utilized it as a game refuge and later as a public hunting ground under its control and supervision, it was stipulated that the land was wild and unimproved and that "nothing had been done with the land within two years from the date the Game and Fish Commission took title." It was also stipulated that, for unexplained reasons, taxes were levied and assessed against Tract 1 in 1960, and that the appellant's decedent thereafter paid all taxes due on the lands for twenty-three years in unbroken sequence. It was stipulated that taxes were also levied and assessed against Tract 2 in the year 1965 and that the appellant's decedent paid all taxes subsequently assessed against it for eighteen years in unbroken sequence. Taxes were levied against Tract 3 in 1976. It was stipulated that the appellant's decedent paid taxes on that tract for eight years thereafter in unbroken sequence.

The record also shows that in 1976 the appellant's title to all three tracts was confirmed by a decree of the Independence County Chancery Court, but it was not shown that the Game and Fish Commission was made a party to that action or served with process as required by the confirmation statutes.

---

[1] This section, with minor changes not material to our issue, now appears as Ark. Stat. Ann. § 47-128 (Repl. 1977).

The chancellor found that the activities conducted on the land by the Commission were sufficient to prevent a reversion to the state under the proviso to Ark. Stat. Ann. § 47-128 (Repl. 1977); that the lands were not subject to taxation; and that the appellant's decedent therefore acquired no title by virtue of the tax payments. He further found that the 1976 confirmation decree was not binding on the Game and Fish Commission because it was the record title holder and not a party to that action. A decree was entered dismissing the appellant's complaint and quieting title in the appellee. We conclude that the chancellor erred in not quieting appellant's title to Tracts 1 and 2.

The Game and Fish Commission cross-complained and sought affirmative relief. The immunity of the state and its arms is therefore not in issue. *Parker* v. *Moore*, 222 Ark. 811, 262 S.W.2d 891 (1953). As it was stipulated that the appellants paid taxes levied and assessed against Tracts 1 and 2 in unbroken sequence for periods of twenty-three and eighteen years, respectively, the principles announced in *Deniston* v. *Langsford*, 211 Ark. 780, 202 S.W.2d 760 (1947); *Koonce* v. *Woods*, 211 Ark. 440, 201 S.W.2d 748 (1947); and *Townsend* v. *Bonner*, 205 Ark. 172, 169 S.W.2d 125 (1943), are controlling, and it was error to deny the appellant's petition for relief.

■ Our courts have long recognized the so-called "doctrine of the lost grant." In *Carter* v. *Stewart*, 149 Ark. 189, 231 S.W. 887 (1921), that doctrine was stated as follows:

> Under its sovereign power, a State imposes the burden upon all its citizens to pay taxes on the property owned by them for the purpose of supporting the government. It is the duty of the officers of the State to place the land in the State on the tax books for that purpose as soon as the State has parted with its title to them. Hence where the State has for a long time demanded and collected taxes on property and the property owner has acquiesced therein by paying the taxes, there arises a presumption that there was a legal liability to pay the taxes, and this furnishes a strong circumstance from which a court may infer a grant from the State. Of course, from the very nature of the thing the person or persons paying the taxes must be in the uninterrupted and continued possession of the land in order to

warrant the court in finding a grant from the State. In such cases the possession of the adverse claimants could have had a legal inception, and the doctrine of presumption of a grant from the State under such circumstances is recognized in many cases.

*Id.* at 195, 231 S.W. at 889. The doctrine was stated in *United States* v. *Chaves*, 159 U.S. 452 (1895), as follows:

[B]y the weight of authority, as well as preponderance of opinion, it is the general rule of American law that a grant will be presumed upon proof of an adverse, exclusive, and uninterrupted possession of twenty years, and that such rule will be applied as a *presumptio juris et de jure*, whenever, by possibility, a right may be acquired in any manner known to the law.

*Id.* at 464.

■■ Ark. Stat. Ann. § 37-102 (Repl. 1962) provides that one who pays taxes on unenclosed and unimproved lands for more than seven years under color of title is presumed to have been in possession of the property from the date of the first payment. Ark. Stat. Ann. § 37-103 (Repl. 1962) provides that one who pays taxes on unenclosed and unimproved lands for more than fifteen years is presumed to have had color of title at the time the first payment was made.

In *Townsend* v. *Bonner, supra*, it was held that the presumption of a grant or redemption from a tax forfeiture arises in favor of one paying taxes for many years on wild and unoccupied lands. It was there held that our tax payment statutes referred to above supply the requirement of possession emphasized in *Carter* v. *Stewart, supra*.

In *Koonce* v. *Woods, supra*, the court again held that redemption in favor of one who had paid taxes for over seventeen years in unbroken sequence on unoccupied lands previously forfeited to the state would be presumed *not as a matter of fact but as one of law*. In so holding, the court pointed out that it was not disregarding the difference between the periods involved in earlier cases of sixty-six years, thirty-four years, and the seventeen years involved in *Koonce*, but that "[t]he period of time goes to the matter of good faith of a two-fold character: faithful

conduct by the State's officers on the one hand, and good faith on the part of the taxpayer." *Id.* at 447, 201 S.W.2d at 752. It concluded that the difference in time could have no effect on the legal principle. The court noted in *Koonce* that there is no statute establishing a period directly applicable to this principle, but considered by analogy Ark. Stat. Ann. § 37-103 (Repl. 1962), which provides that one who pays taxes on wild and unimproved lands for fifteen years has color of title as a presumption of law and, when read in conjunction with Ark. Stat. Ann. § 37-102 (Repl. 1962), gives rise to a presumption of actual possession during that period as a matter of law.

■ In *Deniston* v. *Langsford, supra*, the court discussed the decision in *Koonce* and concluded as follows:

> The opinion as a whole, we think, clearly reflects what the Court had in mind — that the presumption under discussion would never attach unless tax payments of the character in question had been made for a full fifteen-year period.

*Deniston*, 211 Ark. at 782, 220 S.W.2d at 761. In *Miller* v. *Kansas City Southern Railway Co.*, 216 Ark. 304, 225 S.W.2d 18 (1949), the court again stated:

> But, where the State is concerned, or where the sovereign undertakes to profit because of the negative nature of the records, there is another rule. It is that *after payment of taxes in good faith for not less than fifteen years the presumption of a grant may be one of law, as distinguished from one of fact.*

*Id.* at 306, 225 S.W.2d at 19 (emphasis added).

■ Here, it was stipulated that the lands were wild and unoccupied and that the appellant had paid taxes on Tracts 1 and 2 for more than fifteen years in unbroken sequence. Under the doctrine announced in *Townsend, Koonce,* and *Langsford*, there arose a presumption of law that prior to the first payment of taxes some person with a redeemable interest had redeemed the property and it had become subject to taxation, free from claims of the state.

■ Under the rule we would apply, the presumption can

only arise if it was possible for the state to grant or permit a redemption from the forfeiture. The statute provided that the Game and Fish Commission could not sell the land, but did provide for a reversion to the state if the lands were not developed during the first two years after the commission received its title. It was therefore *possible* for the title to revert to the state and it must be presumed that it did. A person with a redeemable interest in the land could have then redeemed it and it will also be presumed that this occurred. We conclude, therefore, that the chancellor erred in denying appellant's petition for confirmation of her title to Tracts 1 and 2.

Since payment of taxes on Tract 3 was only for a period of eight years, these presumptions would not arise as to it. *Deniston v. Langsford, supra.* Since the Game and Fish Commission was not made a party to, or served with process in, the 1976 confirmation action, that decree adds no strength to appellant's title.

The decree is affirmed as to Tract 3, but reversed as to Tracts 1 and 2. The cause is remanded for entry of a decree not inconsistent with this opinion.

CORBIN and MAYFIELD, JJ., agree.