SOUTHWESTERN BELL TELEPHONE Co. *v.* BATEMAN.

5-346                                   266 S. W. 2d 289

Opinion delivered April 5, 1954.

*Blake Downie*, for appellant.

*Coleman & Mayes*, for appellee.

J. SEABORN HOLT, J. This is a suit filed February 12, 1951, by appellee, Geraldine Bateman, under the provisions of § 73-1816, Ark. Stats. 1947, in which she seeks by mandamus to "enforce the furnishing" of telephone facilities in the residence in which she and her husband reside. Thereafter, on September 8, 1951, she filed an amended petition, alleging that appellant had unfairly discriminated against her and prayed for the penalties provided for under the above statute.

Appellant answered, denying all material allegations except admissions shown in an agreed statement of facts, presently set out, and affirmatively pleaded the Statute of Limitation.

The cause was submitted to the trial court on an agreed statement of facts, a jury having been waived, and judgment was rendered in favor of appellee for $2,935 against appellant as statutory penalties for 587 days, — the period from September 8, 1949, to April 19, 1951, at $5.00 per day.

This appeal followed.

For reversal, appellant first earnestly contends that "appellant's requirement that appellee post a $25.00 deposit before receiving telephone service did not constitute discrimination against appellee in violation of § 73-1816 of the Arkansas Statutes," in short, that appellee has failed, on the undisputed facts, to show any right to recover under this section, which requires that she and all applicants for service "first comply or offer to comply with the reasonable regulations of the company."

Since we have concluded that appellant is correct in this contention, we do not consider other assignments.

The stipulated facts were: "Defendant is a corporation doing a general telephone business in the city of Paragould, Arkansas, and plaintiff resides at 507 South Fourth Street, Paragould, Arkansas.

"Plaintiff applied for telephone service and an employee of defendant (which employee had authority to fix the amount of required deposit) originally asked a deposit of $5.00. Upon checking the defendant's records, however, and finding the balance owed by plaintiff's husband, which is explained hereinafter, a deposit of $25.00 was asked.

"Plaintiff thereafter and on February 8, 1949, demanded by registered letter that she be provided with a telephone at her residence, and offered to make a deposit of $5.00 as security for payment of bills, and a copy of this letter is attached hereto and made a part hereof as Exhibit 'A'. Defendant refused said request unless a cash deposit of $25.00 was made by plaintiff, for the reason that plaintiff's husband, with whom she was and still is living, was and still is obligated to defendant for an unpaid telephone bill that had been incurred by him as a co-partner in a business enterprise. Plaintiff had no legal or financial connection with this enterprise, but was married to her husband at the time the obligation was incurred. Plaintiff continued her efforts to secure telephone service, and at all times was ready and willing to make a $5.00 deposit. Defendant continued to refuse to connect service except upon the making of a cash deposit of $25.00, but offered to consider reduction or complete refund of the deposit in the event plaintiff's bills are handled in a satisfactory manner. Plaintiff owes defendant no money and is employed and pays her own obligations from her income.

"On April 19, 1951, an employee of defendant who failed to check the defendant's records as to plaintiff's credit, accepted a deposit of $10.00 and connected residence party line service for plaintiff. This service was changed to one-party residence service on September 25, 1951, at plaintiff's request and no additional deposit was required.

"Defendant's General Exchange Tariff, Advance Payments and Deposits Section, 4th Revised Sheet 1, had been in effect and on file with and approved by the Arkansas Public Service Commission and its predecessors since July 10, 1938, and provides as follows:

"A. If it is deemed necessary by the Telephone Company in safeguarding its interests, applicants for service or present customers may be required to make a deposit of an amount not to exceed two months' exchange service charges plus two months' estimated toll usage, to be applied in payment of any unpaid charges for exchange or toll service which may be rendered. Simple interest at the rate of six per cent per annum will be paid on such deposit, if held thirty days or more. * * *

"D. Any balance of the amounts deposited, credited to the customer's account is returned to the customer at the termination of the contract, or it may be returned at any time previous thereto at the option of the Telephone Company when it is deemed that the customer has established satisfactory credit.

"Defendant has many subscribers to the class of service for which plaintiff applied in the city of Paragould and elsewhere who have no deposit with defendant for the reason that their credit is established with defendant. Defendant has other customers in the city of Paragould and elsewhere who have a $5.00 deposit with defendant. Other deposits in the city of Paragould and elsewhere exceed the amount of $25.00, and in some cases run into hundreds of dollars as there is no arbitrary and fixed limitation as to the amount of deposit." (Here is listed the names of some twenty-five subscribers in Paragould, who have made deposits from $10.00 to $50.00).

"It is further stipulated that the telephone bills of subscribers of the class in which plaintiff's phone would be are handled and collected by defendant company in accordance with the terms stated in their regular monthly statements, a copy of which is set out below. * * . * (The copy of appellant's bill shows

charges for local or exchange service are billed in advance.)

"All other requirements of defendant company have been met by plaintiff. * * *

"The foregoing stipulation is approved as the bill of exceptions herein, this 27 day of July, 1953."

Section 73-1816, above, provides: "Every telephone company doing business in this State and engaged in a general telephone business shall supply all applicants for telephone connection and facilities without discrimination or partiality, within ten (10) days after written demand therefor; provided, such applicants comply or offer to comply with the reasonable regulations of the company, and no such company shall impose any condition or restriction upon any such applicant that are (is) not imposed impartially upon all persons or companies in like situations; nor shall such company discriminate against any individual or company engaged in lawful business, by requiring as condition for furnishing such facilities that they shall not be used in the business of the applicant, or otherwise, under penalty of one hundred dollars ($100.00), and five dollars ($5.00) per day for each day from the expiration of such notice until said demand is complied with or suit is instituted for penalty for failure to comply with said demand, for such discrimination, after compliance or offer to comply with the reasonable regulations of such company and the time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused. Any person denied such telephone facilities shall also have the right to proceed by mandamus or other proper remedy to enforce the furnishing of same," etc.

We are not without long established rules in considering cases of this nature.

From the outset, the burden was on appellee to show that she had been unfairly discriminated against, within the meaning of § 73-1816. This statute is highly penal and a strict compliance with its terms is required. "Noth-

ing can be taken by intendment to show compliance with statutes of this kind." *Rousseau* v. *Ed White Junior Shoe Company,* 222 Ark. 240, 250 S. W. 2d 240.

Material sections of the above statute were construed by this court in what may be termed our landmark case, *Yancey* v. *Batesville Telephone Company,* 81 Ark. 486, 99 S. W. 679, 11 Ann. Cas. 135, where it was said: "Every company is entitled to compensation for telephone facilities furnished by it. It may require the charges for such services to be paid in advance.   *   *   * This power is given for its own protection. In the exercise of it, it may extend credit for such charges to persons it may deem deserving. This is a reasonable exercise of the power, and is essential to its success. No rule can be laid down by which the credit to which each person is entitled can be determined. This is dependent upon various circumstances, such as the amount of property he may have over and above his exemptions and liabilities, his promptness in paying his debts, his being contentious, a wrangler, a fault-finder, his honesty, integrity, and other qualities. The credit due each individual depends upon himself. It can not be fixed by any rule, but must be and is left to the company to determine. The statute forbidding discriminations does not deny the right. It does not come within the evils the statute was intended to suppress. All are required to pay the same rates for the same service in like situations, but the time when it should be paid is within the peculiar province of the company to determine. This is a right of creditors, and there is no reason why it should be denied to telephone companies."

Bearing in mind the above rules of construction, we find no evidence presented here that even tends to show discrimination against appellee, or that the company's deposit demand of $25.00 was unreasonable. It is undisputed that many patrons in Paragould are required to deposit from five to fifty dollars (or more, depending on the credit risk in each case). Clearly, under § 73-1816, and the tariff provisions, above, appellant, company, had the right to require such a deposit as it

"deemed necessary * * * in safeguarding its interest," so long as these requirements were reasonable and non-discriminatory.

This credit extended depends on each individual. "In its exercise, it (the company) may extend credit for such charges to persons it may deem deserving," and "no rule can be laid down by which the credit to which each person is entitled can be determined. * * * It can not be fixed by any rule, but must be and is left to the company."

We find no evidence that a $25.00 deposit requirement was unreasonable and discriminatory, on the evidence presented. We agree that service could not be denied appellee for the sole reason that her husband owed the company for a phone rental, which he refused to pay, but this fact may be considered by the company in connection with other "circumstances" and "qualities," which the company might take into account in determining each person's credit rating.

It is not disputed that appellee and her husband were living together in the residence in which the telephone was installed and both could use it at will and tolls could be charged against it by either. In fact, appellee, subscriber, under the "General Exchange Tariff Rules and Regulations, 7th Div., Revised Sheet 2," on file with our Public Service Commission, was required to pay all long distance messages originating from her phone, whether O.K.'d by her or not. *Southwestern Telegraph & Telephone Company* v. *Sharp & White*, 118 Ark. 541, 117 S. W. 25, L. R. A. 1915 E., 323. We take judicial notice of these rules and regulations, *State, ex rel. Attorney General* v. *State Board of Education*, 195 Ark. 222, 112 S. W. 2d 18. *Seubold* v. *Fort Smith Special School District*, 218 Ark. 560, 237 S. W. 2d 884, and *Koonce* v. *Woods*, 211 Ark. 440, 201 S. W. 2d 748.

There is no evidence that appellee had ever had a telephone installed in her name before and no evidence that the company had ever had an opportunity to establish her credit rating. Appellee conceded that the com

pany had the right to require sufficient deposit to cover two months' exchange service charges, plus two months' estimated tolls. She offered no proof that these charges would not be sufficient to justify a $25.00 deposit, although the burden was on her to make strict proof. She was "employed and pays her own obligations from her income," but the nature of her work, the kind of employment in which she was engaged, or the extent of her earnings, were not disclosed by this record.

Of significance, is the fact that later, appellee did make a deposit of $10.00 and was provided with telephone service. It would be a fair inference that she did not consider a $10.00 deposit to be discriminatory, although it would be double the customary $5.00 deposit.

We conclude, therefore, as indicated, that there is no substantial evidence in this case to warrant a recovery on behalf of appellee and accordingly, the judgment is reversed, and since the cause appears to be fully developed, it is dismissed.

MINOR W. MILLWEE, Justice (dissenting). In reaching the conclusion that there was no evidence which "even tends to show" discrimination or unreasonableness in appellant's demand for a $25.00 deposit of appellee, the majority have arbitrarily substituted their own findings on a factual issue for those of the trial court, sitting as a jury. In reaching the opposite conclusion, the able trial court rendered an exhaustive and learned opinion in which he explored every phase of the present controversy, factual and legal. After citing and examining the leading authorities on the question of whether appellant's action was discriminatory under our statute, the opinion recites: "The net result of the defendant's actions under the facts of this case is that it has completely departed from its own Commission approved rule, and on the statement of facts as to the plaintiff alone, promulgated a new one. To express it otherwise, they have said to the public generally, 'If you apply for service, we do not have to but may require a two months' deposit on service charges and estimated toll usages and we will calculate that amount as

best we can taking into consideration our best estimate of what we think your long distance calls will amount to in two months time.' To this plaintiff they have said, in effect, 'Regardless of the amount two months service and estimated toll usage in your case comes to, we are going to require you to deposit $25.00 because your husband's company owes us an unpaid debt.' This to my mind, in the words of the statute (Ark. Stat., § 73-1816) is a failure to 'supply all applicants for telephone connections and facilities without discrimination or partiality,' and a violation of that clause which reads, 'no such company shall impose any conditions or restrictions upon any applicant that are not imposed impartially upon all persons in like situations.' The plaintiff is entitled to recover.

"Even if the company could be permitted to ignore the rule which it has proclaimed, the common law rule of the Yancey case should not give them relief. It was there said, 'The credit due each individual depends upon himself.' Here, according to the stipulation of facts, the defendant's employee made a determination of the credit allowable to the plaintiff, an employed and self-supporting person, and a deposit of $5.00 required as a result thereof. Quoting from the stipulation of facts, we find the amount of deposit raised to $25.00 'for the reason that plaintiff's husband, with whom she was and still is living, was and still is obligated to defendant for an unpaid telephone bill that had been incurred by him as a co-partner in a business enterprise.' So, in this case, the defendant company used a credit criteria not depending 'upon herself,' but rather upon that of one (even though it be her husband) not a party to the proposed contract. The company requires its monthly service charge to be paid in advance, and if not paid, the telephone can be readily and summarily removed. It would be strange indeed if the company did not also make cumulative records as they occur of charges involved in the long distance calls placed from the phones of its subscribers, and if that be true, at any time it appeared that the user's credit was being overextended they could require a deposit to pro-

tect them, or remove the instrument. This is mentioned merely to indicate that the defendant company could have protected itself and was being overly concerned (if they were) of the plaintiff's credit standing because of her relationship to a past debtor. It would obviously be unfair that one's credit standing should be determined not from his personal abilities and record, but solely from the credit standing of one's relations. For these reasons, the court in the Yancey case wisely limited the rule there announced to a consideration of the individual's personal credit standing.

"In passing, it may be noted that according to the statement of facts varying deposits are required of different individuals in the area concerned. However, this does not enlighten the situation, for insofar as the record is concerned, these may well have been determined within the confines and limitations of the company's rules hereinbefore set out. So far as this record is concerned, the plaintiff is the only applicant for service (or customer) whose amount of deposit has been determined, not by her own credit rating, but by that of a non-contracting party.

"The plaintiff is therefore entitled to recover from the defendant the statutory penalty of $5.00 per day to be reckoned as set out in this opinion previously."

When the trial court's findings are considered along with the stipulation of facts, it should be apparent to anyone that they are based on substantial evidence. In my humble judgment, they constitute a complete and irrefutable answer to the unsupported action of the majority in substituting their own views for those of the trial court.

The judgment should be affirmed, and I respectfully dissent.

Justice McFADDIN joins in this dissent.